No. 13-2373

## In the

# United States Court of Appeals

## For the Second Circuit

————————

In Re Applications to Unseal 98 CR 1101 (ILG),
USA v. John Doe 98-cr-01101

Lorienton N.A. Palmer and
Frederick M. Oberlander,

*Movant-Appellants*,

v.

United States of America and
Felix Sater,

*Appellees*.

————————

**Appeal from the
United States District Court
for the Eastern District of New York**

————————

**BRIEF FOR MOVANT-APPELLANTS**

————————

Richard E. Lerner
255 West 36th St., Suite 401
New York, NY 10018
(917) 584-4864 Tel.
(347) 824-2006 Fax
richardlerner@msn.com
*Counsel for Movant-Appellants*

November 6, 2013

TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................2

JURISDICTIONAL STATEMENT .............................................3

ISSUES PRESENTED FOR REVIEW .......................................5

STATEMENT OF THE CASE....................................................9

STATEMENT OF FACTS ........................................................12

SUMMARY OF ARGUMENT ..................................................15

ARGUMENT ....................................................................15<u>6</u>

CONCLUSION......................................................................29

CERTIFICATE OF COMPLIANCE .........................................30

# TABLE OF AUTHORITIES

## Cases

*Alemite Mfg. v. Staff*, 42 F.2d 832 (2d Cir. 1930) ...................................... 20

*Bartnicki v. Vopper*, 532 U.S. 514................................................................. 8

*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................................... 19

*Bureau of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011) ............................. 21

*Butterworth v. Smith*, 494 U.S. 624 (1990) .................................................. 8

*Carroll v. Princess Anne*, 393 U.S. 175 (1966) ............................................ 8

*Chase National Bank v. City of Norwalk*, 291 U.S. 431 (1934) .................. 20

*Deguelle v. Camilli*, 664 F.3d 192 (7th Cir. 2011) ....................................... 11

*Eastern Railroad Presidents Conf. v. Noerr Motor Freight*, 365 U.S. 127 (1961) 8

*Giglio v. United States*, 405 U.S. 150 (1972) .............................................. 19

*Gottdiener v. Sater*, 13-cv-1824 (SDNY) (LGS).......................................... 9

*Hartford Courant v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)......................... 16

*Kriss v. Bayrock Group*, 10-cv-3959 (SDNY) (LGS) .................................. 9

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, (2d Cir.2006) ............. 16

*Near v. Minnesota*, 283 U.S. 697 (1931).................................................... 21

*New York State Bar Ass'n v. Reno*, 999 F. Supp. 710 (NDNY 1998).......... 9

*New York Times Co. v. United States*, 403 U.S. 713 (1971)........................ 21

*Seattle Times v. Rhinehart*, 467 U.S. 20 (1984) .......................................... 8

*U.S. v. Coppa*, 00-CR-196 (EDNY) (Glasser, J.) .................................... 10

*U.S. v. Dionisio*, 410 U.S. 1 (1973) .......................................................... 24

*U.S. v. Doe*, 63 F.3d 121 (2d Cir. 1995) .................................................... 6

*U.S. v. Gushlak*, 495 Fed. Appx. 132 (2d Cir. 2012)............................... 11

*United Mine Workers v. Pennington*, 381 U.S. 657(1965) ............................ 8

*United States v. Cruikshank*, 92 U.S. 542 (1876)........................................ 8

## Statutes

18 U.S.C. §3500.................................................................................... 19

18 U.S.C. §3771 ................................................................................... 11

28 U.S.C. §1291 .................................................................................... 4

28 U.S.C. §1292 .................................................................................... 4

## Rules

FRCP 58 ................................................................................................. 5

FRCP 79 ................................................................................................. 5

JURISDICTIONAL STATEMENT

## I. Subject Matter Jurisdiction

Appellant Oberlander moved to unseal the docket and contents of *U.S. v. Sater*, 98-CR-1101 (EDNY) (Glasser, J.) in February 2011, JA 003, filing his motion on that docket itself and renewing it through 2011 on that docket, JA 043, where he has otherwise been a civil non-party respondent in the case since May 18, 2010.

Appellee United States, a criminal party there since commencement of the criminal proceeding in 1998, moved on that docket to unseal the docket and certain contents in March 2011.

Appellee Sater, also a criminal party there since commencement in 1998, opposed on that docket in March 2011.

Appellant Palmer and various parties below not parties to this appeal, including *The Miami Herald* and *pro se* movant Linda Strauss, moved in February 2012 to unseal that docket, or that docket and all documents, JA 068, at which time Judge Glasser opened a miscellaneous related proceeding, *In re Application to Unseal*, 12-MC-150 (EDNY) and transferred all outstanding unsealing motions to that docket for consolidated adjudication.

In August 2012, the Judge Glasser unsealed the docket of 98-CR-1101, and by March 2013 pursuant to a final order on the 150 docket, JA 069, had unsealed most but not all the documents.

***As to Appellant Palmer***. As a non-party intervenor/movant whose sole interest in the proceedings below was the unsealing, Palmer appeals pursuant to 28 U.S.C. §1291 insofar as all relief available to and sought by him has been decided and finally disposed of in that 12-MC-150 unsealing proceeding. Alternatively, pursuant to 28 U.S.C. §1292 Palmer appeals insofar as the order appealed from, JA 069, imposes seals so is, or may be, deemed injunctive with respect to him as it restricts his speech or his right to receive information (third-party First Amendment standing)..

3

***As to Appellant Oberlander:*** Mr. Oberlander has dual non-party status, as a non-party respondent brought into 98-CR-1101 by an Order to Show Cause of Appellee Sater on May 18, 2010, and separately thereafter as an intervenor/movant for purposes of the unsealing. Accordingly, as to the unsealing proceedings now concluded on 12-MC-150, Mr. Oberlander's status is identical to that of Mr. Palmer. In other words, Mr. Oberlander has never been a party to the criminal action. His motion to unseal is a separate, *second* collateral matter relative to the criminal matter; Mr. Sater's order to show cause and the relief it requested, which is still in litigation, the *first* collateral matter. The only difference between Mr. Oberlander and Mr. Palmer is that Mr. Palmer was a stranger to the case until he moved for relief collateral to the criminal case and the case is now final as to him. In contrast, Mr. Oberlander was a stranger to the criminal case until Mr. Sater moved for relief against him, which prayer for relief was collateral to the 98-CR-1101 criminal case, and since then Mr. Oberlander moved for his own relief collateral to the criminal case; *viz.* unsealing the 98-CR-1101 docket and documents.

As the unsealing is a separate contained collateral matter as to Mr. Oberlander, pursuant to 28 U.S.C. §1291, he appeals from that matter disposed of entirely by 12-MC-150. Alternatively, pursuant to §1292 he appeals insofar as the order appealed from, JA 069, imposes seals so is, or may be, deemed injunctive with respect to him, as it restricts his speech.

## II. Timeliness

The final order in 12-MC-150, JA 069, was issued March 15, 2013 but not docketed, though such is required by FRCP 58 and FRCP 79, until March 28, 2013. A Motion for Reconsideration was timely made April 19, 2013, within 28 days, tolling the time to appeal. That was denied on May 15, 2013. Notice of Appeal was timely filed on June 14, 2013, within 30 days and so within the 60 days applicable where, as here, the United States is a party or co-respondent. JA 001.

## ISSUES PRESENTED FOR REVIEW

We believe it best to twice bifurcate the issues presented, first to distinguish infringement of our *rights of access* from infringement of our *rights of expression and petition;* second, to distinguish relief we did not obtain below, as to which we assert error, from relief we did obtain, but at too much time and effort; rather than consider those issues moot we assert error, though they are resolved, under the doctrine of "capable of repetition yet evading review."

## I. As to the *Public's* Rights of Access

This case arises from the sealing[1], unsealing, and failure to unseal of documents filed by Appellants and others in EDNY cases *U.S. v. Sater*, 98-CR-1101; *In re Motion for Civil Contempt,* 12-MC-557, and *In re the Unsealing of 98-CR-1101*, 12-MC-150. As to such occurrences, and pursuant to the Appellants' First Amendment and common law rights of access to court proceedings and documents, Appellants make the following assignments of error, all raised below but ignored by the district court.

1. A blanket sealing order, as ostensibly functioned here to allow the earlier sealing, no matter how procedurally proper its issuance may be is facially unconstitutional, at least in a criminal case, at least where it lasts for a non-trivial time. In short, sealing or maintaining a seal on documents and proceedings without individual determination is facially unconstitutional.

2. *U.S. v. Doe*, 63 F.3d 121 (2d Cir. 1995), allowing the blanket sealing of an organized crime case, let alone the sealing of one document or proceeding, on no more than a judge's "sense" of "possible danger," without substantial evidence of well-proven threat of real and significant danger, is bad law, at least as to blanket sealing, and should be disapproved.

---

[1] Appellants use the term "sealed" throughout, with or without quotes, to describe information or documents concealed by the court below, but do not concede any such "sealing" was lawful.

5

3. It was error for the district court to refuse to allow Appellants (and the press) to be heard or introduce evidence relevant to the unsealing of documents, and to fail to take judicial notice of evidence that would support unsealing.

4. Certain documents below remain sealed but should not, as there is no constitutional or common law basis for it, as the case may be, their continued sealing thus error.

5. The district court erred when it said that the absence of any written, docketed sealing order or request must mean that the government had made an oral application 15 years ago which the court granted and thus all sealing was lawful.

## II. As to the *Victims'* Rights of Access

6. To the extent federally protected crime victims have rights of access related to their status other than those held by the public, we make no argument. Mr. Oberlander does not now assert *jus tertii* standing in behalf of Mr. Sater's victims of the racketeering for which he was convicted on 98-CR-1101 as the representation commenced but recently and they decline to be subject to preclusion, reserving all their rights to assert such and other arguments in other venues at other times.

## III. As to Rights of Expression and Petition

When a document is sealed, at least as far as we've been told is law in this circuit, one, and only one, of the following is true:

➢ All parties and privies to the proceeding wherein it was sealed are enjoined from revealing, other than generically, its existence in the case *and* its contents, unless they've sourced the contents outside the proceedings, in which case they may do as they like with the contents but may not reveal that it was submitted in such-and-such document in this case; or

➢ Not only parties and privies, but *all persons in the world* no matter how they obtain it are enjoined from revealing, other than generically, its existence in the case *and* its contents unless

6

they've sourced it outside the proceedings, in which case
again they may do as they like as set forth immediately above.

Pursuant to Appellants' First Amendment rights of expression
and petition, including, *Noerr-Pennington*[2] considerations, appellants make this assignment of error, raised below but ignored:

7. To the extent a sealing order applies to a document or information within one already possessed by a party or privy so
   restrains non-generic speech as to its existence or its contents,
   pursuant to *Seattle Times*, *Butterworth*, and *Bartnicki* heightened
   protections, very possibly up to full, adversarial prior restraint
   procedural due process as contemplated by *Princess Anne*[3].
   must apply, especially where the one restrained is the author
   of the document or information, even more so where the underlying information has been obtained from other than court
   sources. It was error for the court not to do so.

   Such standard must consider the content of the speech, for
   example recognizing core speech as worthy of utmost protection; and insofar as the venue of the proposed but putatively
   enjoined speech would be in a petition for relief before a constitutionally protected forum, for example if, as happened
   here, fraudulent papers were filed under cover of a sealing order and the party(ies) against whom they were filed would
   seek civil or criminal relief, whether juridically, Congressionally, by executive, or administratively, the *Noerr-Pennington* doctrine and related civil rights considerations, e.g. *Cruikshank*[4],
   and *de novo* appellate review must all apply.

---

[2] *Eastern Railroad Presidents Conf. v. Noerr Motor Freight*, 365 U.S.
127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657(1965).

[3] *Seattle Times v. Rhinehart*, 467 U.S. 20 (1984); *Butterworth v. Smith*,
494 U.S. 624 (1990); *Bartnicki v. Vopper*, 532 U.S. 514 (2001); *Carroll v. Princess Anne*, 393 U.S. 175 (1966).

[4] *United States v. Cruikshank*, 92 U.S. 542 (1876).

### III. Appellants

*Palmer.* This is submitted in behalf of Lorienton N.A. Palmer, an interested member of the public with co-extensive standing to petition for access to court documents and proceedings. Mr. Palmer moved below to unseal the docket of the underlying concealed case, *U.S. v. Sater*, 98-CR-1101, and all documents therein.

As to rights of expression and petition, he asserts third party "willing listener of an identified speaker" standing, as he would be told by counsel of matters still under seal as to which he knows enough to tell that they are matters of public concern.

*Oberlander.* This is also submitted in behalf of Appellant Oberlander, an interested member of the public with the same standing as Mr. Palmer *and* an attorney who represents victims of Sater's frauds, both those of his 1990s stock swindle which were the subject of 98-CR-1101[5] and those committed subsequently, including by the fraudulent concealment of his conviction[6]. Mr. Oberlander also moved below to unseal the docket of the underlying concealed case and all the documents therein.

Thus while Mr. Oberlander asserts, *inter alia*, particularized First Amendment rights to inform them (and his other clients) of the contents of documents still (and wrongfully) sealed, to the extent attorneys have the standing to assert such rights[7] and to use that information in their behalf, including in petition for relief, as well as generalized First Amendment rights to tell anyone he wishes and seek his own relief as a private citizen from Congress and other constitutionally protected fora, he does not assert parallel third party "willing listener" standing in behalf of those clients.

---

[5] See *Gottdiener v. Sater*, 13-cv-1824 (SDNY) (LGS).

[6] See *Kriss v. Bayrock Group*, 10-cv-3959 (SDNY) (LGS).

[7] See, e.g. *New York State Bar Ass'n v. Reno*, 999 F. Supp. 710 (NDNY 1998) (chilling may produce attorney self-censorship).

### STATEMENT OF THE CASE

Appellee Sater has a long history of defrauding investors in his business ventures. In 1998, he pled guilty to participating in a "pump-and-dump" stock-trading scheme that bilked investors, most of them elderly, including Holocaust survivors, out of more than $40 million. That guilty plea should have signaled the end of Sater's business career and the award against him of tens of millions of dollars of mandatory restitution for the victims of his crimes. Not so. His entire criminal docket was "sealed," leaving past victims and third parties unaware of his conviction.

From his 1998 conviction by plea, through its 2009 finality by sentencing, on into 2012 the court below concealed from the public and his State Street victims all federal judicial records of, thus for all intents and purposes the existence of, his entire criminal case, *U.S. v. Sater*, 98-CR-1101 (EDNY) (Glasser, J.),

Supposedly, concealing Sater's conviction and cooperation were necessary to protect him, yet curiously throughout the last 12 of those 14 years of secrecy the government and court had already made those very facts public, the government revealing his conviction in a March 2000 global press release which entered the Congressional Record that September, and the court revealing his cooperation by publicly filing *Brady*, *Giglio, Jencks*, and other material a few months later in the case of *U.S. v. Coppa*, 00-CR-196 (EDNY) (Glasser, J.) That is, the *Brady*, *Giglio*, *Jencks* material confirmed to the 19 *Coppa* co-defendants, and anyone else who cared to look at the file, that Sater was a government cooperator.

Remarkably, though the government and court had no problem making those revelations to the public and the *Coppa* defendants, they were tongue-tied when it came to Sater's *victims*. They repudiated mandatory statutes by failing to notify them about his conviction, or his case, even more remarkable given the court's preparation of a secret order (the "Secret Order"), JA 069, in collaboration with the government, filed *ex parte* in 2013 with the Supreme Court – and this Court – in which Judge Glasser affirmed that Sater's 2009 sentencing *was held in open court*, as the right of a

9

crime victim to be informed of an open court sentencing and participate in it is set by statute, as is the obligation of the DOJ and the sentencing judge to see that he gets it. 18 U.S.C. §3771.

Sater, emboldened and enabled by his hidden prosecution and plea, wasted little time in resuming his old tricks and defrauding new victims. By 2002, he had infiltrated and covertly controlled Bayrock, a real estate firm with ties to organized crime, over the next 6 years using it to launder and skim millions, and once again defraud investors and business partners, including by wrongfully concealing his conviction, taking advantage of the sealing of his case in a manner this Court in *U.S. v. Gushlak*, 495 Fed. Appx. 132 (2d Cir. 2012), considered recidivist criminal fraud.

He might still be doing it too were it not for a whistleblower. In 2010, soon after Sater was sentenced "in open court" but with no record of it anywhere, one Mr. Bernstein, a former Bayrock IT manager, gave Appellant Oberlander, unsolicited, a package of documents, including Sater's information, cooperation, and PSR, Bernstein had obtained at the firm, which provided extensive information about Sater's hidden crime and hidden case.

Mr. Oberlander incorporated them into a civil RICO complaint he had been preparing against Sater and others for their operation of Bayrock through a pattern of financial fraud (the Seventh Circuit subsequently confirmed, *Deguelle v. Camilli*, 664 F.3d 192 (7th Cir. 2011), predicate acts of fraud or obstruction, e.g. acts concealing Sater's conviction, in the cover-up of a RICO scheme, are pattern-related to the predicate acts of the scheme itself.)

Mr. Oberlander filed the complaint soon after. But instead of taking steps to help Sater's victims, at the request of Mr. Sater the court below squelched any public reference to the earlier criminal proceedings, Judge Glasser issuing a TRO barring Mr. Oberlander from disseminating the supposedly "sealed" documents, even though Mr. Oberlander was not a party to the criminal case, the court could not identify any sealing or other order that would, or could, have applied to him, could not identify any sealing order ever issued in the case to begin with, not a written

10

one, not oral, not docketed, and could not identify any record of findings capable of appellate review as might conceivably justify such an order had there been one. And as we now know from that Secret Order the proffer and cooperation were never even filed in court so never could have been sealed to begin with.

Put simply, a federal court prohibited Mr. Oberlander from disclosing truthful information about a prominent businessman's criminal wrongdoing, sanctioning an entirely secret criminal proceeding even though Sater's conviction and cooperation had been irretrievably made public a decade earlier, on grounds that the documents and information in them had been "sealed" when, even if they had been sealed lawfully as a *procedural* matter (that is, those documents which actually made it into court), with public notice, hearing, etc. could never have been *substantively*.

Not only did the court conceal all the *criminal* proceedings from the public and the victims, it concealed all the collateral *civil* proceedings in 2010, 2011, and 2012 concerning Appellant Oberlander and others with him, including counsel, as to the victims, at least as to open proceedings, in violation of 18 U.S.C. §3771.

In 2012 Judge Glasser unsealed the docket after an accident in the EDNY office revealed the docket, and in 2013 he unsealed most of the documents on it on the eve of the Supreme Court cert conference, at the same time the Solicitor General was filing the Secret Order that Sater had been sentenced publicly. Until then, secrecy had been maintained for 14 years, in thousands of pages of documents and dozens of hours of hearings, without written or transcribed, docketed sealing orders or record of it.

How do you *lawfully* hold a sentencing in open court while failing to notify victims, and fail to order restitution (though Sater's cooperation and PSR confirmed it is mandatory) in an amount in the tens of millions of dollars, all legal duties of the DOJ or trial judge or both? The same way you *lawfully* maintain concealment of the records for years after that allegedly "public" sentencing. The same way you *lawfully* maintain it for the 12 years preceding:

You don't.

11

## STATEMENT OF FACTS

All "procedural" facts, that is, what happened procedurally, have been stated elsewhere.

Facts supporting the decision to maintain or place a document under seal are not known to us besides the generic statements that they are facts which are "details of Mr. Sater's cooperation" or "to protect an ongoing investigation."

Therefore, notwithstanding that *de novo* review is warranted, *infra*, we are unable to supply what we normally would wish to.

We do, however, incorporate by reference the entirety of that submission on the docket of 12-MC-150 which is ECF No. 74 and Exhibits 1 through 17. These are documents in the public record, mostly from the public files of *U.S. v. Coppa*, which reveal that Mr. Sater's status as a cooperator was publicly disclosed over a decade ago, and well known to the Coppa defendants. They are over 700 pages in total length, though most of that is the volume of the Congressional Record from September 2000 which contains a copy of the press release of March 2000 whereby the government disclosed Mr. Sater's conviction to the world.

This table refers to Bates numbers inside those exhibits.

| EXH. | DESCRIPTION AND SIG BATES NUMBERS |
|------|-----------------------------------|
| A | 3500 letter from AUSA Pitofsky to def. Ray accompanying turnover of tapes of conversations involving Felix Sater, stating the government will call Sater as a cooperating witness, and the government had previously provided materials relating to "another cooperating witness, Salvatore Lauria," *U.S. v. Coppa,* 00-CR-00196 EDNY (Glasser, J.) (filed Nov. 21, 2001). **000002** |
| B | Letter from defendant Lev to AUSA Corngold requesting production of *Brady* and *Giglio* material re Felix Sater and Gennady Klotsman, *Coppa*, (Oct. 10, 2000). **000004** |

| | |
|---|---|
| C | Memorandum of defendant Lev in support, motion for *Brady* and *Giglio* material re government cooperating witnesses Felix Sater and Gennady Klotsman, *Coppa* (filed Nov. 16, 2000). **000006** |
| D | Letter request from defendant Lev requesting sealing of entire case file of *U.S. v. Lev* component of *Coppa*, order granted by this court's endorsement with no notice to public, no opportunity to be heard, no record findings, *Coppa*, (filed Feb. 20, 2002). **000017** |
| E | Letter from defendant Lev objecting to statement in his PSR that his guilty plea was reason Sater was not called as witness, noting Sater "was a witness against many other defendants who ultimately pled guilty," Coppa, (filed Jan. 18, 2002). **000018** |
| F | PSR of def. Salaman containing presumably same statement, Sater did not testify against Lev because of Lev's plea, same presumably in all *Coppa* defs.' PSRs, *Coppa* (Jan. 11, 2002). **000035** |
| G | Various letters from AUSA's and others to court, progress reports re the status of victim identification and losses and interim lists of known victims, approx. June 2002, *Coppa*. **000075** |
| H | Transcript of Feb. 2, 2001 open court hearing, *Coppa* co-defs. and counsels, including Persico, present, re "Mr. Felix Sater, an unindicted co-conspirator and cooperator with the government, an individual who is going to testify…" discussed in presence of this court and AUSA Corngold, latter confirming this description of Sater *sub silentio*; note this was ECF filed in 2004 Ex. 1-3 in Ray §2255 action 04-CV-00013 (Glasser, J.), publicly available on PACER since. **000127-000130** |
| I | This court's order in 04-CV-00013, stating it has read Ray's submissions, thus is the court's own admission of its prior knowledge of Exh. H and its ECF provenance (filed Feb. 19, 2004). **000131** |
| J | AUSA Corngold's government witness list for *U.S. v. Persico*, noting Felix Sater, *Coppa*. **000733** |

13

| | |
|---|---|
| K | Document 546, *Coppa*, re sealing Palagonia resentencing transcript (filed Mar. 25, 2011). **000136** |
| L | Entry 71, 12-MC-150, re court's refusal to docket contempt events (filed Oct. 17, 2012). **000734** |
| Q | House of Rep., Hearing Before the Subcommittee on Finance, *Organized Crime on Wall Street*, No. 106-156 (Sep. 13, 2000) press release **000646**, and descr. of NASD CPAG, **000706-000711** |

14

## SUMMARY OF ARGUMENT

Appellants respectfully state that the contents of the Issues Presented section serves as a Summary of Argument and ask the Court refer thereto.

Appellants maintain, pursuant to *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, (2d Cir.2006); and *Hartford Courant v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004), that the public and the press have a qualified First Amendment right to access the documents herein that remain under seal, and that this court must undertake a *de novo* review of the documents that remain sealed, and the arguments made in support of sealing, not restricted to the "facts" that may have been presented by the government and Sater below, but with a view of all of the facts currently known to this Court, including those as to which it may take judicial notice and those referenced in the immediately preceding section herein to ECF No. 74 on the docket of 12-MC-150.

Yet, even if the right of access to some documents by their content and character are judged according to common law, and indeed regardless what standard of review is applied, this Court should bear in mind that the government and Mr. Sater bore the burden of proof. The Court should also bear in mind that the district court expressly declined to entertain any evidence in opposition to continued sealing, which, we submit, turns due process inside out, in that the district court allowed only the evidence (if it even was evidence) of the parties seeking to restrict access.

With respect to the prior restraint issues raised herein, the issues come to this court with a strong presumption of unconstitutionality. *New York Times Co. v. United States*, 403 US 713 (1971).

## ARGUMENT
## (INTRODUCTION)

### *The Appeal in a Nutshell*

Imagine the following are within your acquaintance. Perhaps you're a lawyer representing one or more; or a business partner; or a reporter; or perhaps none of those things; but indulge us:

1. ***A***, widow and mother of the children of Richard Greaves, who's disappeared, rumored to have been killed by members of his crime family because he wanted to retire from the life.

2. ***B***, a man who owned a store in Brooklyn on Stilwell until it burned down when sparks blew over from a warehouse fire next door, leaving him in debt as he had no insurance.

3. ***C***, an equity partner in the fire insurance company that paid a claim made by one Mr. Saracino, owner of the warehouse.

Imagine one day in 2011 someone comes and says, "You're the lawyer for ***A*** or ***B*** or ***C*** or partner of ***A*** or ***B*** or ***C*** or a reporter, better look at this," and hands you an envelope containing two documents. The first is an information charging Sebastiano Saracino with racketeering, predicate crimes including murder of Greaves; arson of the warehouse; and mail fraud for making a false insurance claim; the second a transcript of his guilty plea to it. They'd probably look a lot like documents JA 006 and JA 007[8].

What are your rights and obligations? Let's consider:

---

[8] Those documents are the information and plea in *U.S. v. Saracino*, 10-CR-928 (EDNY) (Cogan, J.) sealed from 2010 through 2012. The Court is *not* asked to accept their contents as true, for example that any finding of Judge Cogan therein is true, only that they are as represented, as legislative facts to support our argument, not adjudicative facts (they would serve as well for our purposes if assumed to be fictive; for that matter the Court could notice them as adjudicative facts per FRE 201, but need not).

**First**, does it matter where the person who gave them to you got them from? One eminent jurist recently observed:

> I understand the point that you're making about the propriety of permitting somebody to make something public and not keep that information sealed. But I would call your attention to about a half a dozen cases of the Supreme Court of the United States, beginning with the *Pentagon Papers* and *Bartnicki* and *Aguilar* and *Boehner*, countless cases where somebody may have done something inappropriately, but the information was – was or wasn't protected by the First Amendment. That's another matter.[9]

Judge Glasser spoke those words when he unsealed the docket of 98-CR-1101, knowing that under, most recently, *Bartnicki*, it wouldn't matter if the person who gave you those documents had robbed a liquor store and killed the owner for the cash to buy the burglar's tools he used to break into Saracino's house and copy the documents *and you knew he did that*, so long as you, the recipient, had nothing to do with the crimes, and the information he gave you was of public concern – *e.g.* it revealed crime.

*****

**Second**, does it matter whether they were (lawfully) sealed? Look at the decretal language Judge Cogan issued in his order sealing the plea, JA 008 (also a true copy of what it purports to be):

> IT IS ORDERED that the motion to close the court-room during the defendant's guilty plea, to use the name "John Doe" in place of the defendant's true name in the case's caption, and to seal the transcripts of the plea proceeding and this Order is hereby granted.

---

[9] The Hon. I. Leo Glasser, *Transcript of Motion Conference August 22, 2012*, at pg. 30, JA 134.

17

> IT IS FURTHER ORDERED that the closure of the courtroom be tailored by requiring the government, with advance notice to the defendant, to disclose the transcript as required by *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), 18 U.S.C. §3500 and/or Rule 16 of the Federal Rules of Criminal Procedure.

> IT IS FURTHER ORDERED that the closure of the courtroom be tailored by requiring the government and the defendant to move this Court to unseal the transcript of the plea proceeding and substitute the defendant's true name for "John Doe" in the caption when the prejudice to the parties' interests no longer outweighs the public's qualified right to access; and

> IT IS FURTHER ORDERED that the public docket will immediately be amended to reflect the occurrence of the hearing on the motion to close the courtroom, the disposition of the motion and the fact of courtroom closure.

Not one word about sealing the information, but call that oversight. There *is* a decree, "It is ordered that the motion…to seal the transcripts…is hereby granted." Is that language (or any other language) directed to you? Well, what's meant by an order to "seal" something? Let's look at the actual cover sheet used in the EDNY to effectuate sealing, which says only, JA 174:

> Ordered sealed and placed in the clerk's office, and may not be unsealed unless ordered by the court.

(JA 174 is the sealing cover filed by Morgan Lewis, Mr. Sater's lawyers in the May 18, 2010 Order to Show cause on 98-CR-1101. It's blank where they were to put the date of entry of the order to seal. Of course it is; as Judge Glasser confirmed, there was no order. How the EDNY clerk allowed filing "under seal" when there was no sealing order to review is a good question.)

18

(How this Court came to state in a written opinion, Summary Order of June 29, 2011, No. 10-2905-CR, *that it independently reviewed that non-existent order* is equally problematic)

In any event, clearly, the only person that language on the cover sheet is addressed to is the clerk of the court, for the very obvious reason that he's the only one who can place it in (his own) office "under seal" and keep it there.

If the order sealing them has no decretal language directed at *you* it can't matter to *you* that the documents were subject to such an order; it is basic American law that injunctions operate in equity, so are available only where there is *in personam* jurisdiction, enjoining not a thing from being done *but the person from doing it*.

As this Court knows well, particularly since it issued the most important decision on the subject, *infra*, an injunction cannot bind someone not a party or privy and one purporting to be so issued may be freely ignored as so much worthless dross (*quo tanto brutum fulmen*), even if the decretal language says, "Anyone aware of this order is hereby enjoined from…", as no court can enjoin the world and no court can affect the rights of anyone not a party or privy. *Alemite Mfg. v. Staff*, 42 F.2d 832 (2d Cir. 1930), *Chase National Bank v. City of Norwalk*, 291 U.S. 431 (1934).

*****

**Third**, does it matter if you're a lawyer, partner, or reporter? In terms of your *duties* to your acquaintances it does, but a reporter would have no duties to **A**, **B**, or **C** to tell them; a lawyer or a partner would. But in terms of your *rights* to disseminate the documents, what limit could there be? Does this Court believe reporters have more rights of expression on matters of public concern than private citizens? If so, it might review *Citizens United v. FEC*, 558 U.S. 310 (2010), which holds they don't. Does it believe those with law degrees yet not litigating the case whence the documents came have fewer rights than private citizen non-lawyers? No case so holds, not *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), *not any. We don't assign First amendment rights in this country based on speaker identity in what would be violation of viewpoint neutrality.*

19

\*\*\*\*\*

So, secure in the knowledge that you can quite lawfully (assume you're a lawyer) sue Saracino in civil RICO in behalf of your clients **A**, **B**, and **C**, and you send him a pre-suit demand letter, warning you will sue publicly if does not settle.

Assume in response Saracino, through counsel, files a plenary suit in state court (absent diversity there would be no federal jurisdiction) against you requesting a permanent injunction against your revealing what you know inside the context of that suit *or outside it*, by order to show cause requesting a TRO, claiming that revealing his plea to those crimes would threaten his life so you must be enjoined from it. What must he do to prevail?

This Court knows well Saracino would have to establish at a clear and convincing evidentiary standard by full adversarial due process that he has a constitutionally cognizable interest, presumably here a threat to his safety, so overwhelming in force and certainty of occurrence as the equivalent of imminent nuclear war[10].

And that's just the Expression Clause. Because he would be interfering with, indeed plainly suing you because, *inter alia*, you brought a lawsuit, in other words you engaged in constitutionally protected *petitioning*. The Petition Clause would apply, and that is far more powerful because, as Judge Scalia noted, *Bureau of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011), the rights of expression and petition are not coterminous, as rights of expression depend upon the nature of the speech, with core speech given the utmost protection, parochial commercial speech often less, while rights of petition have historically always been exercised in purely private, parochial and commercial interests. In other

_____

[10] We see no need to dwell on the procedural (*Carroll Anne*) and substantive law of prior restraint, citing only briefly the usual suspects, *Near v. Minnesota*, 283 U.S. 697 (1931*), New York Times Co. v. United States*, 403 U.S. 713 (1971), and so on, and the drummed-into-every-lawyer's-head legislative fact that not once in history has the Supreme Court ever upheld a prior restraint.

words, *Noerr-Pennington* would prohibit this quite possibly even if there *was* an imminent threat to your safety, as it has nowhere ever been said that we know of that the courts are charged with police powers to protect persons, rather than the executive.

What Saracino *couldn't* do is prevail by having a court hold – based on hearsay, conclusory *ex parte* statements from counsel that helped it "sense" there *might* be danger if you went ahead with the lawsuit – that that would be enough to enjoin you.

*Yet that's the standard Judge Cogan applied in sealing Saracino's documents and plea, and he did so because this Court said 20 years ago in Doe that it sufficed in an organized crime case*

Look at the transcript of the closure hearing:

> THE COURT: All right. This is the public hearing on the government's motion to seal the courtroom. I've read the application and we have, of course, posted the public notice required for this hearing. Ms. Geddes, my only question about the application is while you generally refer to the grounds upon which sealing might occur, the application is a little short on specifics. Now, I know you are constrained here from giving me full specifications, but I'm wondering if there's anything publicly you can use to supplement the application, so I have a basis for making the required factual findings, and if there isn't, if you feel you need to tell me more under seal, as your motion was filed under seal, then I would close the courtroom for that limited purpose.

> MS. GEDDES: Give me one moment, if you would.

> THE COURT: All right.

> MS. GEDDES: Your Honor, perhaps, we could just step aside to a side-bar without actually formally closing the courtroom. Would that be --

21

THE COURT: Yes. Well, that's fine, but of course, I'm still going to have to seal this portion of the record while we are at side bar.

MS. GEDDES: Yes, Judge.

THE COURT: And I will do that. I order that. And we will have the supplement to seal the application at side bar. (The following took place at side bar)

MS. GEDDES: Judge, I'm not -- could you be more specific?

THE COURT: Yes. You have generally said that there's a danger to the investigation and there's a danger to the defendant, and the only thing you have said to support that is that the crime family has a history and that is just a little vague for me to make a specific finding that the concerns you have about compromising the investigation and endangering the defendant's family are, in fact, valid, given [Alcantara's] command that I have a specific basis for making the finding that those things could occur.

MS. GEDDES: Yes, now I understand. The defendant in this case is cooperating against individuals who are charged in the Gioeli case, including his brother, Dino Saracino. Dino Saracino was captured on a consensual recording making an expressed threat if he were to identify any individuals cooperating against him and the Colombo family he would advise -- I can't remember the precise quote, but it was a direct threat about physically harming, and in fact, killing any individuals who were determined to be cooperating. Given that this defendant is cooperating against the very individual who made that statement, I think that is sufficient to find a danger.

22

In addition, the defendant is providing information about existing Colombo family members and associates who are currently on the street right now and those individuals have been captured on consensual recordings making threats to any individual who is determined to be cooperating against those individuals left on the street, and that threat was not made specific to the defendant, but yet, the defendant has provided information against those individuals, and then, those individuals, separate and apart, have made threats regarding what they would do to any of individuals determined to be cooperating because they do believe that someone is cooperating against them.

THE COURT: Okay. That is good enough for me. Thank you, very much. This is sealed.

\*\*\*\*\*

That is the only standard this circuit requires, at least in an organized crime case involving a cooperator, even for a blanket sealing order. So this Court has held in *U.S. v. Doe* invoked with regularity, certainly enough times in the instant case, like a proverbial "talisman that dissolves all constitutional protections." *U.S. v. Dionisio*, 410 U.S. 1 (1973). There is a proverbial magic totem of incantation whenever anything involving organized crime is sealed. We address that below, arguing it is facially unconstitutional, especially when combined with a refusal by the court to take testimony from those who would oppose sealing.

But at no time in history would any court think it could enjoin expression or petition based on such a pitifully sparse record.

Then how has it happened in the instant case? How were Mr. Oberlander and others enjoined for so long from disseminating truthful information of public concern, and still are with respect to certain documents, including that Secret Order which is a judicial and executive smoking gun, without anything even pretending to be at the requisite levels of First Amendment due process and *Noerr-Pennington* protections?

23

The answer is, Not lawfully. In fact, it isn't even clear what pretext was used. Apparently the court below – and this Court – simply decided that if a document was sealed, even if unlawfully without an actual sealing order, then (to "protect" the "dignity" of sealing) Mr. Oberlander and the others could be enjoined simply by finding the existence of a sealing order it has been conceded couldn't lawfully have, and never did, bind them or otherwise direct any decretal language to them.

Quite literally, the courts here have decided that anything that can be sealed can be the subject of a prior restraint by simply ordering the person to be restrained into the case where the sealing order issued as a non-party respondent and saying, "OK now you're subject to restraint based on minimal findings," a breathtaking rewrite of First Amendment law, without precedent.

Or in our Saracino example, if he sues you *de novo* in a plenary action, the First Amendment protects you at traditional, i.e. essentially insurmountable, standards, but if they have you brought into the criminal case as a non-party respondent you're on your own with no such protection, possibly never to be heard from again as of course you'll be prohibited from telling anyone what's going on by the same "sealing orders" serving as abhorrently unconstitutional gag orders..

We say no.

And in particular we say no with respect to those documents remaining under seal of which we already have possession so know their contents, especially where we ourselves wrote them.

### ARGUMENT (CONT'D)
### (RIGHTS OF ACCESS)

There are four categories of document that the district court declined to unseal. One category includes documents that were part of the prior appeal in the matter of Roe v. United States, Second Circuit Docket No. 10-2905. We do not address those documents in this appeal as the issues will be addressed in a separate motion to unseal this Court's 10-2905 docket and all documents on it.

A second category comprises the complaint and other documents in the matter of Kriss v. Bayrock Group LLC, SDNY Docket No. 10-cv-3959. We do not address those issues in this brief, as they are being litigated in the Southern District.

The third category concerns "details of criminal investigation." For example, items 26, 27 and 28 are orders from 2001, 2004, and 2005, which the district court has kept under seal in their entirety because they allegedly contain details of a criminal investigation. Yet the docketed entry merely indicates that they were orders allowing Sater to travel. Other documents that were so designated include, e.g., the government's secret *ex parte* applications to stay and then withdraw its March 17, 2011 motion to unseal the docket of 98-cr-1101. To the extent such documents containing "details of criminal investigation" contain allegations against Appellant Oberlander or his counsel Richard E. Lerner, we maintain that there could be no valid basis to keep from Oberlander or Lerner, much less the public.

The fourth category comprises documents that bear upon "safety," presumably alleged risks to Felix Sater. It is this last category that is mainly at issue on this appeal, as the Appellants contend that maintaining such documents under seal has been entirely pretextual.

Finally, there is a set of documents, not all reflected on the docket, filed on 98-CR-1101 having to do with allegations of

contempt against Appellant Oberlander and counsel. Judge Cogan subsequent to their filing created a new docket, 12-MC-557, for those proceedings but explicitly ordered that Judge Glasser would decide whether to unseal the filings made before that, including this set. Judge Glasser has refused our requests to unseal them or provide adequate, indeed any, cognizable reason why, which is of course error, as there is palpably nothing on them which is remotely dangerous.

## ARGUMENT (CONT'D)
## (RIGHTS OF EXPRESSION AND PETITION)

To be sure, no court involved in this case has held that information Appellant Oberlander or counsel possessed on their own or developed without use of information from sealed court proceedings is subject to restraint from their dissemination *ad libitum*, except as to the original 5 documents from Bernstein about which enough has been said already. No court could; while a court could control the dissemination of documents filed in court containing that information, or revelation in public that such filings were made, the mere use of such information in court filings does not subject it to restraint on extra judicial dissemination without a plenary action for a prior restraint and full due process review. See, for example, *Butterworth v. Smith*.

The question then is what about documents given a participant in a court proceeding, or authored by him using in whole or in part information obtained from that proceeding. Can the court simply, by issuing a sealing order – and remember the near nil requirements to do that under *Doe* – enjoin their dissemination?

Clearly, more is required. The First Amendment does apply even there, as again we are not talking about restricting access, but restricting speech. In *Seattle Times*, for example, the Supreme Court made quite clear – as Justice O'Connor herself noted during oral argument in Bartnicki – that the First Amendment did apply to protective and sealing orders. Seattle Times established the Rhinehart doctrine, that normal strict scrutiny did not apply where, for example, a party obtained information by forced discovery, and a protective order could – could – negate the right to disclose what was learned. But the case and subsequent cases made quite clear that First Amendment protection still did apply, at an intermediate level of scrutiny.

Appellants assert the same. And in doing so they charge error insofar as Judge Glasser has by use of sealing orders, even worse by use of Doe sealing orders, effectively enjoined them, although

27

Appellants argue this is a classic example of transparent invalidity – from revealing that documents are, or were, being filed against them accusing them and counsel, for example, of racketeering.

Appellants respectfully request *de novo* review pursuant to that intermediate level of scrutiny, to be determined by the content of the documents in question, or remand with instructions to hold hearings allowing them to introduce evidence that in a word this is unconstitutional. Lawyers do not check their First Amendment rights at the courthouse door.

## CONCLUSION

Wherefore the above, undersigned counsel certifies under penalty of perjury pursuant to 28 U.S.C. §1746 that all facts stated herein are true to the best of his knowledge, including from familiarity with the files maintained for these matters, and prays for the relief requested, plus all further relief which this Court deems just and proper.

THE LAW OFFICE OF RICHARD E. LERNER, P.C.

Counsel for Movant-Appellant Oberlander

Appellate Counsel for Movant-Appellant Palmer

By:

/s/ RICHARD E. LERNER
255 West 36th St., Suite 401
New York, NY 10018
(917) 584-4864  Tel.
(347) 824-2006  Fax
richardlerner@msn.com
*Counsel for Movant-Appellants*

New York, New York

November 6, 2013

29

CERTIFICATE OF COMPLIANCE

Counsel signed above certifies under penalty of perjury pursuant to 28 U.S.C. §1746 that all typeface, size, and spacing requirements have been complied with and that this document contains 8,000 words, counting footnotes, according to MS-Word 2013.