# 13-2373

*To Be Argued By*:
TODD KAMINSKY

---

# United States Court of Appeals

## For the Second Circuit

◆◆

IN RE APPLICATIONS TO UNSEAL
98 CR 1101 (ILG), USA V. JOHN DOE 98-CR-01101

---

LORIENTON N.A. PALMER, FREDERICK MARTIN OBERLANDER,

*Movants-Appellants,*

—against—

JOHN DOE 98-CR-01101, UNITED STATES OF AMERICA,
and FELIX SATER,

*Respondents-Appellees.*

---

**On Appeal From The United States District Court
For The Eastern District of New York**

---

## BRIEF FOR THE UNITED STATES

---

PETER A. NORLING,
TODD KAMINSKY,
ELIZABETH KRAMER,
EVAN NORRIS,
   *Assistant United States Attorneys,*
    *Of Counsel*.

LORETTA E. LYNCH,
*United States Attorney,*
*Eastern District of New York.*

i

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................ iii

PRELIMINARY STATEMENT ........................................ 1

STATEMENT OF FACTS ........................................... 3

    I.    Introduction ......................................... 3

    II.   Background ........................................... 4

        A.    Felix Sater's Conviction and
            Cooperation ................................... 4

        B.    Sealing History ............................... 5

        C.    Disclosure of Sater's Conviction
            and Cooperation ............................... 6

        D.    The Presentence Reports ....................... 8

        E.    Oberlander's Public Filing of
            Sealed Documents .............................. 9

        F.    The June 21, 2010 Hearing .................... 10

        G.    The July 20, 2010 Oral Argument .............. 12

        H.    This Court's February 14, 2011
            Summary Order (Roe I) ........................ 13

        I.    This Court's June 29, 2011 Summary
            Order (Roe II) ............................... 14

        J.    Initial Proceedings on Remand ................ 16

        K.    August 2012 Inadvertent Unsealing
            of the Docket Sheet .......................... 20

        L.    The District Court's March 2013
            Unsealing Orders ............................. 21

ARGUMENT - THE DISTRICT COURT'S ORDERS REGARDING
           SEALING SHOULD BE AFFIRMED ....................... 25

    I.    Legal Standard ..................................... 25

ii

      A.    Sealing ....................................... 25

      B.    Standard of Review ........................... 29

II.  Discussion ....................................... 30

      A.    Overview ..................................... 30

      B.    Bases for Sealing ............................ 34

           1.    Danger to Sater and his Family ........... 35

           2.    The Integrity of Investigations .......... 40

           3.    The Ability of the Government to
                 Attract Future Cooperation ............... 43

           4.    Deference to Existing Orders ............. 45

      C.    The Limited Nature of the Sealing ............. 46

      D.    Movants' Other Arguments ...................... 46

CONCLUSION ............................................. 49

iii

TABLE OF AUTHORITIES

Page

CASES

Dorsett v. County of Nassau,
  No. CV 10-1258, 2011 WL 130324 (E.D.N.Y. Jan. 14, 2011) .....26

Hartford Courant Co. v. Pellegrino,
  380 F.3d 83 (2d Cir. 2004) .............................25, 27

Illinois v. Abbott & Assocs., Inc.,
  460 U.S. 557 (1983) .......................................43

In re Application of National Broadcasting Co., Inc.,
  635 F.2d 945 (2d Cir. 1980) ...............................26

In re Application of Newsday, Inc.,
  895 F.2d 74 (2d Cir. 1990) ................................26

In re Application of New York Times Co.,
  577 F.3d 401 (2d Cir. 2009) ...........................26, 27

In re Grand Jury Subpoena,
  103 F.3d 234 (2d Cir. 1996) ...........................42, 43

In re New York Times Co.,
  828 F.2d 110 (2d Cir. 1987) ...............................27

In re Petition of Craig,
  131 F.3d 99 (2d Cir. 1997) ................................42

Lugosch v. Pyramid Co.,
  435 F.3d 110 (2d Cir. 2006) .......................26, 27, 28

Newsday LLC v. County of Nassau,
  730 F.3d 156 (2d Cir. 2013) ...........................30, 34

Nixon v. Warner Communications, Inc.,
  435 U.S. 589 (1978) .......................................25

Press-Enterprise Co. v. Superior Court of Cal.,
  478 U.S. 1 (1986) .....................................25, 29

Roe v. United States,
  133 S. Ct. 1631 (March 25, 2013) .........................16

iv

Roe v. United States,
    133 S. Ct. 2883 (June 24, 2013) ..........................16, 48

Roe v. United States,
    414 Fed. Appx. 327 (2d Cir. 2011) .......................13, 32

Roe v. United States,
    428 Fed. Appx. 60 (2d Cir. 2011) ......................._passim_

United States v. Amodeo,
    44 F.3d 141 (2d Cir. 1995) .............................26, 40

United States v. Amodeo,
    71 F.3d 1044 (2d Cir. 1995) ...................27, 28, 29, 44

United States v. Aref,
    533 F.3d 72 (2d Cir. 2008) .............................25, 28

United States v. Capeci,
    424 Fed. Appx. 35 (2d Cir. 2011) ..........................42

United States v. Charmer Industries, Inc.,
    711 F.2d 1164 (2d Cir. 1983) ..............................11

United States v. Cirillo,
    149 Fed. Appx. 40 (2d Cir. 2005) .........................37

United States v. Doe,
    63 F.3d 121 (2d Cir. 1995) ............................_passim_

United States v. Gangi,
    1998 WL 226196 (S.D.N.Y. May 4, 1998) ....................40

United States v. Graham,
    257 F.3d 143 (2d Cir. 2001) ..............................26

United States v. Haller,
    837 F.2d at 84 (2d Cir. 1988) ............................35

United States v. Mancuso,
    2008 WL 2884397 (E.D.N.Y. July 23, 2008) .................37

United States v. Moussaoui,
    205 F.R.D. 183 (E.D. Va. 2002) ...........................36

United States v. Sattar,
    471 F. Supp. 2d. 380 (S.D.N.Y. 2006) .....................46

v

United States v. Tangorra,
   542 F. Supp.2d 233 (E.D.N.Y. March 26, 2008) ................26

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 13-2373

IN RE APPLICATIONS TO UNSEAL 98 CR 1101 (ILG),
USA V. JOHN DOE 98-CR-01101

LORIENTON N.A. PALMER, FREDERICK M. OBERLANDER,

Movants-Appellants,

-against-

JOHN DOE 98-CR-01101, UNITED STATES OF AMERICA and FELIX SATER,

Respondents-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BRIEF FOR THE UNITED STATES

PRELIMINARY STATEMENT

Movant-Appellants Lorienton N.A. Palmer and Frederick
Oberlander ("Movants") appeal from two orders of the United
States District Court for the Eastern District of New York
(Glasser, J.), entered March 13 and March 14, 2013, granting in
part and denying in part motions to unseal documents in a
criminal case, United States v. Sater, 98 CR 1101 (ILG), and

2

from an order entered May 15, 2013, denying a motion for reconsideration.[1] Movants contend that the orders violate their First Amendment rights. For the reasons set forth below, the orders should be affirmed.

---

[1]    Proceedings arising from the motions to unseal have been assigned docket number 12 MC 150.

    As more fully set forth below, matters arising from Oberlander's attempts to unseal resulted in an earlier appeal, Roe v. United States, 428 Fed. Appx. 60, 68 (2d Cir. 2011).

STATEMENT OF FACTS

I.  Introduction

On June 29, 2011, this Court issued a summary order with respect to the appeals brought by Frederick Oberlander, Esq. and his clients. Among other rulings, the Court affirmed the issuance of an order by the Honorable I. Leo Glasser permanently enjoining dissemination of a Presentence Investigation Report concerning Felix Sater that was prepared in 2004 (the "2004 PSR"). Roe v. United States, 428 Fed. Appx. 60, 68 (2d Cir. 2011) ("Roe II"). With respect to other documents in Oberlander's possession, i.e., (1) two proffer agreements dated October 2 and October 29, 1998, (2) a "draft" criminal information, (3) Sater's cooperation agreement, dated December 10, 1998, and (4) the sealed criminal complaint (collectively the "Other Sealed and Confidential Documents"), which had been the subject of a temporary restraining order issued by the district court, the Court dismissed the appeal and remanded to the district court with instructions "to issue a final determination regarding whether [their] dissemination. . . should be enjoined." (Id. at 68-69).

On remand, before the district court could determine whether to issue a permanent injunction with respect to the Other Sealed and Confidential Documents, in August 2012, while the matter was still pending, Sater's criminal docket sheet was

4

inadvertently unsealed by the Office of the Clerk of Court, revealing Sater's identity and conviction and the fact of his cooperation. Thereafter, the district court granted a motion to unseal the docket sheet in its entirety and scheduled a hearing to determine whether any of the underlying documents themselves should be unsealed. After holding extensive hearings and receiving further briefing, the district court issued orders dated March 12 and 13, 2013 (the "Orders")[2] unsealing the majority (over 75 percent) of documents in their entirety, unsealing others subject to redaction, and keeping the balance (approximately 10 percent of the total) sealed.

Movants now challenge the Orders on various grounds, none of which has merit.

II. Background

A. Felix Sater's Conviction and Cooperation

On December 10, 1998, Felix Sater pleaded guilty, pursuant to a cooperation agreement, to an information charging him with participating in a racketeering enterprise, in

---

[2] The first order, bearing Docket Entry No. ("DE") 104 in 12 MC 150 and DE 220 in 98 CR 1101 (the "3/12/13 Order"), is a public order that enumerates which documents were being unsealed in their entirety and that states that the balance will be unsealed only in part if at all. (It is attached to this brief as an appendix.) The second, bearing DE 106 in 12 MC 150 and DE 221 in 98 CR 1101 (the "3/13/13 Order"), is a sealed document that provides the reasoning for the determinations set forth in the first order.

5

violation of 18 U.S.C. § 1962. The RICO predicate acts consisted of securities fraud in connection with offerings and after-market manipulation of the securities of multiple entities and the unlawful laundering of the proceeds of these schemes.

Following his guilty plea, Sater worked with prosecutors from the United State Attorney's Offices in the Eastern and Southern Districts of New York and law enforcement agents for more than 10 years, providing information crucial to the conviction of over 20 individuals, including those responsible for committing massive financial fraud and members of La Cosa Nostra ("LCN").

On October 23, 2009, Judge Glasser sentenced Sater to probation and a $25,000 fine. Prior to sentencing, the government submitted a letter pursuant to Section 5K1.1 of the United States Sentencing Guidelines.

B.    Sealing History

From the case's inception in 1998 through August 2012, the docket sheet, along with all of the documents filed therein, was sealed. The docket was listed as United States v. John Doe, and the first entries on the docket reflected the government's notice of intent to proceed under Rule 7(b) of the Federal Rules of Criminal Procedure as well as Sater's December 10, 1998 guilty plea. Although the docket does not reflect any letter filed in support of sealing or any written order sealing the

case, it appears likely that one of the parties made an oral application to seal the docket at the time of the guilty plea, one of the first events in the case, which application was orally granted.[3]

With respect to the October 23, 2009 sentencing, the case was listed on the court calendar as United States v. John Doe, but the courtroom was open for the proceeding.

C.    Disclosure of Sater's Conviction and Cooperation

Sater never testified in open court pursuant to his cooperation agreement.  Since 1998, there have, however, been a limited number of instances in which information and rumors about Sater's criminal case and cooperation have surfaced.

In a November 1998 Businessweek article, the author, who had obtained a copy of the sealed complaint in Sater's case, implicated Sater in a stock fraud and money laundering scheme. Additionally, a 2007 New York Times article about Sater suggested that Sater had been indicted for securities fraud and was a government cooperator.  The article identified Sater as an

---

[3]    A copy of the transcript of the guilty plea cannot be obtained because the court reporter has since died and his notes cannot be located.  However, clerk's office personnel have located a document entitled "Criminal Cause for Motions" that was created by the district court's courtroom deputy either at or following the plea proceeding.  Written notations on that document indicate, among other things, "all documents sealed" and "Transcript sealed," from which it can be concluded that an oral motion to seal the case was likely made and granted at the time of the guilty plea.

unindicted co-conspirator in a March 2000 indictment that led to the convictions of 19 people, including members of the Mafia. A former alleged co-conspirator of Sater's stated in the article that Sater had obtained information for the United States about a set of missiles on the black market. The Times, however, was unable to confirm many of these assertions.

There have also been occasions on which the government has acknowledged Sater's cooperation. In 2001, in anticipation of trial in United States v. Coppa, 00 CR 196 (ILG) (E.D.N.Y.), the government provided one of the defendants against whom Sater had cooperated with material pertaining to Sater pursuant to 18 U.S.C. § 3500. That defendant then pled guilty on the eve of trial. The government has no information to suggest that Sater's § 3500 material was disseminated to individuals outside of that defendant's legal team. In addition, in 2009, the government unsealed the docket of a co-conspirator of Sater's without realizing that a docketed letter filed by the government in that case mentioned Sater's cooperation. After this oversight was brought to the government's attention, on December 2, 2010, the government requested that the district court reseal the letter, which request was granted. See United States v. Salvatore Lauria, 98 CR 1102 (ILG) (E.D.N.Y.), DE 25.

On February 25, 2011, it was brought to the government's attention that on March 2, 2000, the government had

8

issued a press release announcing the indictment of 19
defendants in which the government referenced Sater's conviction
and referred to him by his real name.  The press release did not
mention Sater's cooperation with the government.[4]

D.  The Presentence Reports

The United States Probation Department initially
prepared the 2004 PSR in connection with Sater's sentencing,
which was then scheduled for September 9, 2004.  The 2004 PSR
mentioned Sater's cooperation more than once.  (PSR ¶¶ 130, 185-
86).  Pursuant to Fed. R. Crim. P. 32(e)(2), the Probation
Department disclosed the 2004 PSR to the defendant and the
government prior to the scheduled sentencing date.  However,
subsequent to the Probation Department's disclosure and the date
of sentencing, counsel for Sater requested an adjournment of the
sentencing in light of his on-going cooperation, which request
was granted.

---

[4] The foregoing disclosures were all discussed in
briefing to this Court in connection with the first appeal.
Following remand, an additional disclosure was brought to the
government's attention regarding Lawrence Ray, the defendant to
whom Sater's § 3500 material had been provided and who then
pleaded guilty on the eve of trial.  Specifically, in 2012,
Oberlander, having apparently inspected various files archived
with the Clerk of Court, notified Judge Glasser and the
government in a motion that he had discovered a November 27,
2001 letter to Ray's attorney in which then-Assistant U.S.
Attorney David Pitofsky had described Sater as a "cooperating
witness."

By the time Sater was ready to be sentenced in 2009, the 2004 PSR required revision to account for changes related to Sater's financial circumstances as well as changes to various other personal aspects of Sater's life that had occurred in the intervening years. As a result, in September 2009, the Probation Department disclosed a revised PSR (the "2009 PSR") that contained updated information. The 2009 PSR was used for Sater's sentencing in October 2009.

E.    Oberlander's Public Filing of Sealed Documents

On May 10, 2010, Oberlander filed a civil RICO complaint against Sater and 29 other defendants in the United States District Court for the Southern District of New York (the "SDNY Complaint"), attached to which were exhibits that related to Sater's criminal case. Specifically, the exhibits included (1) excerpts from the 2004 PSR, (2) two proffer agreements, dated October 2 and 29, 1998, and (3) Sater's cooperation agreement dated December 10, 1998. Aside from the attachments, the SDNY Complaint itself also explicitly referenced Sater's cooperation. Several days later, the SDNY Complaint, including its exhibits, became publicly available.

On May 18, 2010, upon Sater's application, Judge Glasser issued an order to show cause as to why a preliminary injunction should not be issued requiring Oberlander to return the sealed and confidential documents to Sater and a temporary

restraining order ("TRO"). The order also enjoined Oberlander from further disseminating the aforementioned documents or information contained therein, pending a hearing on the motion.

F.  The June 21, 2010 Hearing

The district court held a hearing on June 21, 2010, at which both Oberlander and Sater testified.

Oberlander acknowledged that on March 12, 2010, two days after the SDNY Complaint was filed but prior to its being made public,[5] he sent the following email, to which the SDNY Complaint was attached, to the father of one of the plaintiffs he represented in the SDNY civil action, asking that it be forwarded to Julius Schwartz, the general counsel of Bayrock:

> I recommend you forward this to Julius with the comment from me that there are three alternatives here:
>
> (a) I file publicly today.
>
> (b) I file under seal today.
>
> (c) He arrange a tolling agreement with EVERY defendant but [law firm] nixon peabody.
>
> I don't care how many people he has to get on the phone and how fast he has to work. He

---

[5]  Oberlander testified that he had originally tried to file the complaint under seal but that after his sealing motion was denied by a Southern District of New York judge, he filed it without any sealing request.  However, Oberlander's initial (and only) application to seal the SDNY Complaint did not mention Sater or Sater's cooperation in support of sealing but, rather, sought sealing for unrelated reasons.

had years to give back the money and now
it's over. He can get Brian Halberg [an
assistant general counsel with Bayrock] to
help him.

I believe it's possible to get this in under
seal if Bayrock joins in a joint motion in
part 1 to seal the complaint pending a
redaction agreement with the assigned judge
but there are never any guarantees.

Thanks,

[Frederick Oberlander]

(DE 51 at 4-5). Since no further sealing motion was made, the

SDNY Complaint became a publicly-available document shortly

thereafter.

At the conclusion of the hearing, the district court,

relying on United States v. Charmer Industries, Inc., 711 F.2d

1164 (2d Cir. 1983), issued a permanent injunction against the

dissemination of the 2004 PSR and the information contained

therein and directed Oberlander to return the document to the

United States Attorney's Office. (6/21/10 T (Transcript of

district court proceedings) at 94). With Oberlander's consent,

the district court extended the TRO until July 20, 2010 with

respect to the Other Sealed and Confidential Documents and

requested briefing as to whether it had the authority to enjoin

the dissemination of those documents.

On July 9, 2010, Oberlander filed a notice of appeal

from the district court's May 18 and June 21, 2010 orders

(Docket No. 10-2905-cr), the first of seven notices of appeal he would file over the course of the next year.

G.   The July 20, 2010 Oral Argument

At oral argument held on July 20, 2010, the district court made several factual findings. It concluded that Oberlander knew the documents at issue had been sealed prior to his public filing of them. The court also found that Bernstein had wrongfully obtained the documents and that "Mr. Oberlander . . . had . . . documents which he knew or perhaps should have known may have been improperly obtained by Bernstein and passed onto him." Judge Glasser characterized Oberlander's actions as "something very bad and perhaps despicable." Over Oberlander's objection, the district court maintained its previous ruling, ordering Oberlander to return the PSR, including any copies, and prohibiting its dissemination. The court reiterated its concern about whether it had the authority to restrain the dissemination of the Other Sealed and Confidential Documents and asked for further briefing on that subject. As a result, it extended the TRO for an additional ten days. In support of that order, Judge Glasser stated, "I think there is irreparable harm, which is imminent to Mr. John Doe, those documents contained information which is highly, highly sensitive and if disseminated . . . . I think[] it would place Mr. John Doe's safety at risk." (7/20/10 T at 27).

13

H.   This Court's February 14, 2011 Summary Order (Roe I)

        An  initial  appearance  before  this  Court  took  place

with  oral  argument  on  February  14,  2011,  to  address  Oberlander's

second  notice  of  appeal  (Docket  No.  11-479-cr),  which  sought  a

writ  of  mandamus  directing  the  district  court  to  unseal  Sater's

criminal  docket  sheet,  and  the  government's  request  to  seal  the

appeal  and  for  other  relief.   After  hearing  argument,  the  Court

issued  a  summary  order  denying  Oberlander's  petition  and

granting  the  government's  request  to  keep  the  appeal  under  seal

and  temporarily  to  enjoin  Oberlander  and  his  clients  from

distributing  or  revealing  documents  subject  to  sealing  orders  in

the  district  court  or  this  Court.   Roe v. United States,  414

Fed. Appx. 327, 328-30 (2d Cir. 2011) ("Roe I").

        In  the  same  order,  the  Court  remanded  the  case  for  the

limited  purpose  of  allowing  the  Chief  Judge  of  the  United  States

District  Court  for  the  Eastern  District  of  New  York  to  assign  a

district  judge  "with  the  limited  mandate  of  implementing  and

overseeing  compliance  with  our  orders  and  the  orders  previously

entered  by  Judge  Glasser."   Id. at 329-30 (noting, "[o]f  course,

Judge  Glasser,  an  experienced  and  able  jurist  who  has  shown

admirable  patience  and  forbearance  in  the  face  of  extraordinary

14

provocations, shall retain jurisdiction over the underlying (and long-lived) criminal proceeding").[6]

I.   This Court's June 29, 2011 Summary Order (Roe II)

On June 29, 2011, this Court issued a summary order concerning the original appeal brought by Oberlander as well as the five additional notices of appeal he had filed since Roe I seeking various additional forms of relief with respect to orders issued by Judge Glasser and the Honorable Brian M. Cogan, who had been appointed in accordance with this Court's instructions to enforce compliance with sealing orders.

Among other rulings, the Court affirmed the district court's issuance of an order permanently enjoining dissemination of the 2004 PSR. Roe II, 428 Fed. Appx. at 66-67. With respect to the Other Sealed and Confidential Documents that were the subject of the TRO, the Court dismissed the appeal and remanded to the district court with instructions "to issue a final determination regarding whether [their] dissemination . . . should be enjoined." Id. at 68-69. The Court further noted that "in the event that a final determination regarding the dissemination of the other sealed documents does not result in

_____

[6]   The "extraordinary provocations" to which the Court alluded presumably included a July 16, 2010 declaration submitted by Oberlander to the district court. In it, Oberlander accused Judge Glasser variously of operating a "star chamber" and presiding over a "racketeering enterprise." (DE 68 (attachment), at ¶¶ 1, 18, 48, 55).

an injunction against the dissemination of documents referring to Doe's cooperation, [the district court is] to enter an order temporarily staying the unsealing of any documents referring to Doe's cooperation pending an appeal by the government to our Court." Id. at 69 (emphasis added). The Court also instructed the district court on remand to rule on a limited motion to unseal that the government had filed in the district court during the pendency of the appeal. Id. at 68-69.[7]

In addition, the Court ordered that Judge Cogan retain jurisdiction to ensure compliance with all sealing orders of this Court and Judge Glasser and that the Panel retain jurisdiction "over any further appeals." Id. at 69. Finally, the Court ordered that Oberlander should refrain from "other future filings of a frivolous nature." Id.

Oberlander and his clients variously filed petitions for panel rehearing and rehearing en banc that were ultimately denied. On December 20, 2011, the mandate issued. Oberlander's petition for a writ of certiorari to the United States Supreme Court was denied, Roe v. United States, 133 S.

_____

[7] On March 17, 2011, shortly after the March 2, 2000 press release (discussed above) had been brought to its attention, the government moved the district court for a limited unsealing of the docket sheet and certain documents in the underlying criminal case, excluding entries and documents that referred to Sater's cooperation. (DE 101).

16

Ct. 1631 (Mar. 25, 2013), as was his motion for leave to file a petition for rehearing, <u>Roe v. United States</u>, 133 S. Ct. 2883 (June 24, 2013).

J.    <u>Initial Proceedings on Remand</u>



In December 2011, shortly before the mandate issued, Oberlander demanded of the district court the "immediate

---

8 

18

unsealing" of the 2004 PSR (making no mention of the order by
this Court not to "re-litigate the issues" it had decided), the
Other Sealed and Confidential Documents, and a number of other
documents. (Joint Appendix at 1). In addition, Oberlander, who
had not yet been made aware that the government had withdrawn
its March 17, 2011 motion to unseal, moved to unseal the
documents that were the subject of the government's motion.
(Id.). After a status conference held the following month,
Judge Glasser entered a scheduling order, dated January 26,
2012, stating that "in light of the government's withdrawal of
its March 17, 2011 motion to unseal and the reasons provided
therefor, the only issue ripe for decision following . . .
remand . . . is whether this Court should permanently enjoin
non-party [Frederick Oberlander] from disseminating" the Other
Sealed and Confidential Documents. (DE 128).

On February 24, 2012, Oberlander filed a motion making
vituperative attacks against Judge Glasser, claiming that the
district court lacked subject matter jurisdiction and asking for
various forms of relief. Though the motion purported to respond
to the government's February 7, 2012 memorandum of law in
support of the issuance of a permanent injunction, it did not
substantively address the issue as to which the district court
had ordered briefing in its scheduling order. Rather,
Oberlander claimed, among other things, that there existed

19

"overwhelming evidence of the criminal misconduct of the court and department of justice" and that "[the district] court may be well alleged to have participated in racketeering . . . to defraud victims of restitution money . . . ." (DE 141 at 4, 6). Oberlander also contended that the case should be "transfer[red] outside the Second Circuit," claiming that the Second Circuit's "rogue operation of an unconstitutional, illegal, hidden or 'dual' docket criminal justice system" lends an "appearance of bias and conflict." (Id. at 15).[9]

At the same time that Oberlander was mounting his attacks, several intervenors moved the district court to unseal the criminal docket, and the Clerk of Court opened a miscellaneous docket number, 12-150, to docket the filings. (8/27/12 Opinion and Order at 1 n.1 (discussing the various intervenors)).[10]

_____

[9]   The government responded to Oberlander's motion by letter dated March 20, 2012. (DE 151).

[10]   Also during this period, Oberlander and his attorney, Richard Lerner, Esq., submitted to an interview with the New York Times that resulted in the publication of an article that, among other things, made clear that Oberlander was the "Richard Roe" referred to in court documents. See "By Revealing Man's Past, Lawyer Tests Court Secrecy," New York Times, February 5, 2012. Information that had apparently been disclosed during the course of the interview led Sater's attorneys to file a motion before Judge Cogan seeking to hold Oberlander and Lerner in civil contempt. At a conference held on February 27, 2012 to address an order to show cause issued by Judge Cogan, the court referred the matter to the United States Attorney's Office for the Eastern District of New York for a criminal contempt

The foregoing motions, as well as a decision with respect to the permanent injunction, were thereafter pending before Judge Glasser.

K.    August 2012 Inadvertent Unsealing of the Docket Sheet

Before the district court had decided the pending matters, a regrettable but inadvertent error in the Office of the Clerk of Court fundamentally altered the issues before Judge Glasser:

> [D]ue to an unfortunate series of events in the office of the Clerk of Court, the docket sheet of 98 Cr. 1101 – which revealed Doe's identity and the fact of his conviction and cooperation – was inadvertently unsealed for several days and then subsequently resealed. During the period in which it was publicly available, several members of the media, Lexis, Westlaw, and others accessed it. Copies of the docket sheet remain available on Lexis and Westlaw today.

(DE 42 at 3-4). Concluding that "the cat is out of the bag, the genie is out of the bottle," Judge Glasser granted the various movants' motions to unseal the docket sheet. (Id. at 5-6).

The district court also scheduled a hearing "for the purpose of determining whether unsealing any document that has been filed in 98 CR 1101 is required" and ordered that "[t]he

investigation.

██████████████████████████████

21

Government and Doe will bear the burden of establishing that there are compelling interests that override the qualified First Amendment and common law rights of access." (Id. at 7).

L.    The District Court's March 2013 Unsealing Orders

Between October 9, 2012 and January 18, 2013, the district court held five in camera hearings (four in person and one telephonic) at which the government and Sater's counsel were present to address which documents, or portions thereof, should remain sealed. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

At the conclusion of the hearings, ████████████████

████████████████████████████████████████████

██████████ the district court publicly filed an order setting forth its findings that 150 of the 195 documents on the docket -- over 75% -- should be unsealed in their entirety. (3/12/13 Order at 2 (noting that "a Memorandum and Order providing the bases for these findings, together with the documents at issue and the sealed transcripts of the in camera proceedings at which those findings were made will remain sealed and [be] submitted to the Court of Appeals for review and determination")).

22

In a separate, sealed memorandum and order issued the
following day, the district court set forth its reasons for
finding that the government and Sater had met their burden with
respect to select documents or portions of documents. (3/13/13
Order). Specifically, Judge Glasser ordered that 24 documents
be partly redacted and 21 be sealed in their entirety. ███

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████

                    ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████

        ████████████████████████████████████████████████

---

11
    ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████



24



This appeal followed.

<u>ARGUMENT</u>

THE DISTRICT COURT'S ORDERS
<u>REGARDING SEALING SHOULD BE AFFIRMED</u>

Movants challenge the district court's March 12, 2013 and March 13, 2013 orders regarding sealing on a number of grounds. As we show below, the district court's orders were correct.

I.  <u>Legal Standard</u>

   A.  <u>Sealing</u>

Under the common law, the public has a "general right to inspect and copy public records and documents, including judicial records and documents." <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589, 597 (1978). Similarly, under the First Amendment, the public has a "qualified . . . right to attend judicial proceedings and to access certain judicial documents." <u>Hartford Courant Co. v. Pellegrino</u>, 380 F.3d 83, 91 (2d Cir. 2004); <u>see also</u> <u>Press-Enterprise Co. v. Superior Court of Cal.</u>, 478 U.S. 1, 9 (1986). This Court has held that "[t]ransparency is pivotal to public perception of the judiciary's legitimacy and independence," though it "must at times yield to more compelling interests." <u>United States v. Aref</u>, 533 F.3d 72, 83 (2d Cir. 2008).

In applying the common law right of access to determine whether an item can be filed under seal, the district

court must (1) determine whether the item is a "judicial document," (2) if it is, determine the weight of the presumption of access to any judicial document, and (3) balance countervailing interests against the presumption of access. Lugosch v. Pyramid Co., 435 F.3d 110, 119-20 (2d Cir. 2006). The test for whether an item is a "judicial document" is not whether it is filed with the court, United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"), but rather whether the item is "relevant to the performance of the judicial function and useful in the judicial process," id.[12] The weight

---

[12] Courts in this Circuit have found the following items to be "judicial documents" triggering a common-law presumption of access: documents submitted in connection with sentencing, United States v. Tangorra, 542 F. Supp.2d 233, 237 (E.D.N.Y. 2008) (Wexler, J.), items entered into evidence at trial, In re Application of National Broadcasting Co., Inc., 635 F.2d 945, 952 (2d Cir. 1980) ("In re NBC"), audio recordings played during a bail hearing, United States v. Graham, 257 F.3d 143, 151-53 (2d Cir. 2001), submissions relating to conditions of a pretrial detainee's confinement, United States v. Basciano, Nos. 03-CR-929, 05-CR-060, 2010 WL 1685810 at *2-*4 (E.D.N.Y. April 23, 2010) (Garaufis, J.), and search warrant applications (at least upon completion of the investigation), In re Application of Newsday, Inc., 895 F.2d 74, 79 (2d Cir. 1990). On the other hand, courts have rejected claims that documents turned over in discovery are "judicial documents," Dorsett v. County of Nassau, No. CV 10-1258, 2011 WL 130324 (E.D.N.Y. Jan. 14, 2011) (Tomlinson, M.J.), and have questioned whether scheduling submissions qualify as such, United States v. Sattar, 471 F. Supp.2d 380, 389-90 (S.D.N.Y. 2006). It should also be noted that Congressional statutes mandating confidentiality can overcome the common law presumption of access, In re Application of New York Times Co., 577 F.3d 401, 408 (2d Cir. 2009) (applying Title III standard for disclosure of wiretap documents rather than common law).

27

of the presumption of access to a judicial document, which falls along a "continuum," is determined by "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II").

In assessing whether the public's qualified First Amendment right attaches to a particular item, courts in the Second Circuit have applied two approaches. The first is the "experience and logic" test, which assesses "whether the [items] have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." Lugosch, 435 F.3d at 120 (internal quotation omitted). The second approach considers the extent to which the items are derived from, or a necessary corollary of, the capacity to attend the relevant proceedings.[13]  Id.

However, even if the qualified First Amendment right attaches to an item, it is not automatically made public, but

---

[13]  This Court has found that the qualified First Amendment right to public access applies to docket sheets, Hartford Courant, 380 F.3d at 93, plea agreements, United States v. Haller, 837 F.2d 84, 86-87 (2d Cir. 1988), and papers submitted in connection with suppression and in limine motions, In re New York Times Co., 828 F.2d 110, 114 (2d Cir. 1987), but not to wiretap applications, In re Application of New York Times Co., 577 F.3d at 411.

may be sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (internal quotation marks omitted). Such findings "may be entered under seal, if appropriate." Aref, 533 F.3d at 82 (internal quotation marks and citation omitted).

This Court has established a four-part test in the related context of deciding motions for closure. First, the district court must determine if there is "a substantial probability of prejudice to a compelling interest of the defendant, government, or third party, which closure would prevent." United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995) (citations omitted). Compelling interests include, among other things, "danger to persons or property," id., as well as the ability of law enforcement to secure current and future cooperation from persons desiring confidentiality, Amodeo II, 71 F.3d at 1050. Second, if a substantial probability of prejudice is found, the court must consider whether "reasonable alternatives to closure cannot adequately protect' the compelling interest that would be prejudiced by public access." Doe, 63 F.3d at 128 (citations omitted). Third, if such alternatives are found to be inadequate, the district court must determine whether, under the circumstances of the case, the prejudice to the compelling interest "override[s] the qualified

29

First Amendment right of access." <u>Id</u>. (citations omitted).
Finally, if the court finds that closure is warranted, it should
devise a closure order that, "while not necessarily the least
restrictive means available to protect the endangered interest,
is narrowly tailored to that purpose." <u>Id</u>. (citations
omitted).[14]

B.   <u>Standard of Review</u>

In reviewing a district court's decision regarding
access to criminal proceedings or documents, this Court reviews
findings of fact for clear error, conclusions of law <u>de novo</u>,
and the ultimate decision to grant or deny access for abuse of
discretion. <u>Doe</u>, 63 F.3d at 125. "However, because the
district court's discretion is significantly circumscribed by

---

[14]   Movants argue that <u>Doe</u>, a long-standing decision of
this Court, is "bad law" and provides a mechanism for sealing
that is too easy to meet and does not comport with the Supreme
Court's First Amendment jurisprudence.   (Movants' Brief ("Br.")
at 3).   While <u>Doe's</u> validity is not directly at issue, there is
also no reason to believe that it is anything but good law.   To
begin with, it has been applied by district courts for nearly 20
years with no court, as far as the government can tell,
quarreling with its validity.   Second, the four-part test
enunciated in <u>Doe</u> was merely the logical application of the
Supreme Court's standard that the "presumption [of openness] may
be overcome only by an overriding interest based on findings
that closure is essential to preserve higher values and is
narrowly tailored to serve that interest."   <u>Press-Enterprise
Co.</u>, 478 U.S. at 9.   The Supreme Court has never suggested that
it had created an exhaustive list of what such "higher values"
included, and it would be surprising to think that circuit
courts were not able to fill out that definition or that an
individual's safety could not be included within that
definition.

constitutional principles set forth by the Supreme Court, this court's review is more rigorous than would be the case in other situations in which abuse-of-discretion review is conducted." Id. (internal citations and quotations omitted). See also Newsday LLC v. County of Nassau, 730 F.3d 156, 163 (2d Cir. 2013) ("[W]e have also held that the First Amendment concerns implicated by the sealing of proceedings or documents mandate close appellate scrutiny. In such cases, we have traditionally undertaken an independent review of sealed documents, despite the fact that such a review may raise factual rather than legal issues . . . . We therefore independently examine the Report and related transcripts with due consideration for the prerogative of the district court to administer the evidence before it."). Here, the district court did not err, much less abuse its discretion, in carefully finding that a relatively small number of documents should remain sealed, in whole or in part, because their contents compromised compelling interests.

II. Discussion

A. Overview

In this case, the district court conducted an extremely thorough review of the documents in question, bearing in mind its obligation to uphold First Amendment protections and the public's common law right of access. ▮



The district court's appreciation of the importance of public access to judicial documents and processes is also evident in light of the sheer number of documents it unsealed, especially when compared to those it ruled should remain under seal. Out of the scores of documents contained on the underlying docket sheet (98-CR-1101), the district court unsealed 150 documents completely and determined that only 24 (one being a duplicate of another) should remain sealed because

Of those 24 sealed documents,

---

[15] "T" preceeded by a date refers to pagination in that date's transcript of the proceedings in the district court.

[16]

32

only 15 were sealed in their entirety, with many of the remainder having only very brief selections redacted.

34

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

B.    Bases for Sealing

At the hearings, the government argued, and Judge
Glasser agreed, that certain documents or portions of documents

35

should remain sealed.   The legal and factual bases for the
sealing arguments are set forth below.

    1.   <u>Danger to Sater and his Family</u>



       This Court has long found that danger to individuals
is a countervailing factor that may outweigh the public's common
law and First Amendment rights of access to particular
documents.   <u>See</u> <u>United States v. Haller</u>, 837 F.2d 84, 87 (2d
Cir. 1988); <u>Doe</u>, 63 F.3d at 128 (countervailing factor in
courtroom closure context).

37



While Sater's connection to Coppa, the 19-defendant stock fraud case, was disclosed insofar as his arrest was mentioned in a government-issued press release announcing the indictment of that case, and in the government's letter to defendant Lawrence Ray announcing that "cooperating witness Felix Sater" would be testifying against him, those were limited disclosures that should not trigger a wholesale publication of every aspect of Sater's activities on behalf of the government.

---

17

39

Though it was true that the government told co-defendant Ray about Sater's status as a cooperating witness, Ray was the only defendant who brought the case to the eve of trial. It does not follow that all 18 co-defendants were aware of that information (many had pleaded guilty by that time), nor does it follow that if they had been aware that Sater was a cooperating witness against one co-defendant that it necessarily meant that he was cooperating against other co-defendants.

At any rate, the district court's ruling as to DE 185 is the only document that might be impacted by such an argument█

40

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████ 18 ███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

2.   The Integrity of Investigations

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[18]    While Movants cite numerous examples of documents that they claim demonstrate the government's past disclosure of Sater's cooperator status (Br. at 10-12), those citations either exaggerate or mischaracterize those filings.   While those filings may show that others accused Sater of being a cooperating witness, the government did not confirm such statements.   For example, Movants claim that at a status conference in which a co-defendant referred to Sater as a cooperator, the government confirmed his status "sub silentio" when it did not object to the statement.



42



19

[redacted]

3.   The Ability of the Government
     to Attract Future Cooperation

[redacted]

---
20 [redacted]

44

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

        This Court has found that the government's need to
attract current and future cooperation from persons desiring
confidentiality may properly be weighed against the public's
qualified right to access court documents.  See Amodeo II, 71
F.3d at 1052 ("[I]f . . . informants in present or future cases
anticipate that their cooperation will likely become a matter of
public knowledge, valuable cooperation might cease.").  ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

45

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████

4.  <u>Deference to Existing Orders</u>

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████    If those other courts
later unseal the documents, the government will endeavor to make
the underlying docket reflect those unsealing determinations.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████ [21] ████████████████████████████████

---

[21]    Movants do not challenge the district court's rulings
on either of these grounds, stating that those rulings will be
addressed in a separate motion (with respect to the sealing of
PSR-related items) or will be litigated in the Southern District

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

C.     The Limited Nature of the Sealing

The district court's 3/13/13 Order was narrowly tailored to protect the compelling interests at issue. ████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████     Such careful redactions also implicitly demonstrate that the district court sealed entire documents only when it found that redactions would not prevent the harm it identified. See United States v. Sattar, 471 F. Supp. 2d 380, 389 (S.D.N.Y. 2006) ("The Court has carefully redacted the documents to assure that the redactions are narrowly tailored to redact only the matters as to which there is a sufficiently compelling interest in personal privacy."). Accordingly, the district court's sealing decisions were narrowly tailored pursuant to Doe.

D.     Movants' Other Arguments

Movants spend much of their brief arguing about the validity of sealing orders issued by the district court, both at

of New York (with respect to the sealing orders issued from that court). (Br. at 25).

47

the initiation of the case and thereafter, and also as to whether the district court has the power to enjoin them from disseminating the Other Sealed and Confidential Documents. (See, e.g., Br. at 6-7. 11). These arguments are either not at issue in this appeal, completely miss the point, or are wrong.

First, Movants' claims with respect to the Other Sealed and Confidential Documents are irrelevant because the issue is moot, as no injunction issued. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Since the Other Sealed and Confidential Documents are already publicly available, Movants' demand that this Court proclaim their right to disseminate them is bizarre.

Second, Movants' claim that the district court's original sealing order does not apply to them as they were not parties to the case when that order was issued is beside the point. Once one removes the documents that they obtained from Sater's employee (the Other Sealed and Confidential Documents), the district court's original sealing order becomes irrelevant. The documents referenced in the 3/13/13 Order that remain under

seal are not in Movants' possession so far as the government knows, and since Movants' entry into the case, they have been put on explicit notice as to which documents are under seal. It would be shocking to think that a district court is without power to determine, after a full hearing, which documents in one of its cases are to be maintained under seal. While Movants' principal argument is that the orders at issue constitute a prior restraint on their First Amendment rights, all that is in fact at issue are the two orders appealed from, neither of which compels the Movants to perform any act.

Third, the apparent urgency Movants wish to attach to these issues (Br. at 23) is non-existent. Oberlander raised these same issues in his petition for <u>certiorari</u> when he sought to overturn this Court's ruling with respect to the continued sealing of Sater's PSR. (<u>See</u> <u>Roe v. United States</u>, No. 10A707, Petition for a Writ of Certiorari, May 10, 2012, at 25-38). The Supreme Court denied the petition.

For the reasons set forth above, the district court's March 12 and March 13, 2013 orders regarding sealing should be affirmed.

49

<u>CONCLUSION</u>

For the above-stated reasons, the orders should be affirmed.

Dated:     Brooklyn, New York
           March 4, 2013

                              Respectfully submitted,

                              LORETTA E. LYNCH,
                              <u>United States Attorney</u>,
                              <u>Eastern District of New York</u>.

                    By:    _____/s/_____
                              Todd Kaminsky
                              Assistant U.S. Attorney


PETER A. NORLING,
TODD KAMINSKY,
ELIZABETH KRAMER,
EVAN NORRIS,
<u>Assistant United States Attorneys</u>,
     <u>Of Counsel</u>.

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 10,777 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a monospaced typeface using Microsoft Word in 12-point Courier New font.

Dated:  Brooklyn, New York
        March 4, 2014

                              _____/s/_____
                              Peter A. Norling
                              Assistant U.S. Attorney