# NO. 13-2373

## United States Court of Appeals
### *for the*
### Second Circuit

In Re Applications to Unseal 98 CR 1101 (ILG),
USA v. John Doe 98-cr-01101

Lorienton N.A. Palmer, Frederick Martin Oberlander,
Movants-Appellants,

v.

John Doe 98-cr-01101, United States of America,
Respondents-Appellees.

## Reply Brief

Richard E. Lerner, Esq.
Law Office of Richard E. Lerner, PC
501 Fifth Avenue, Suite 300
New York, New York 10017
richardlerner@msn.com
(917) 584-4864
Attorney for Appellants

# TABLE OF CONTENTS

MARCH 18, 2014     1

SUMMARY     5

PART I: STRUCTURAL ERROR     6

     THE "SEALING"     6

     THE "UNSEALING"     9

PART II: TRIAL ERROR     11

     THE "SEALING"     11

     THE "UNSEALING"     11

PART III: MISSING DOCKET ENTRY ERRORS     13

PART IV: THE INEVITABILITY OF FRAUD     15

FINAL THOUGHTS     27

# TABLE OF AUTHORITIES

## Cases

*Carroll v. Princess Anne*, 393 U.S. 175 (1968) ........................................................ 9

*Gambale v. Deutsche Bank*, 377 F.3d 133 (2d Cir. 2002) ..................................... 28

*Hartford Courant v. Pellegrino*, 380 F.3d 83 (2004) ............................................ 6

*Kriss v. Bayrock*, 10-CV-3959 ................................................................................. 4

*Lugosch v. Pyramid Co. of Onondaga Co.*, 435 F.3d 110 (2d Cir. 2006) ............... 27

*NSA Telecommunication Records Litigation*, 671 F.3d 881 (9th Cir. 2011) ......... 10

*Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980) ...................................... 6

*Seattle Times v. Rhinehart*, 467 U.S. 20 (1984) .................................................... 10

*U.S. v. Alcantara*, 396 F.3d 189, 192 (2d Cir. 2005) ............................................ 6

*U.S. v. Doe*, 63 F.3d 121 (2d Cir. 1995) ................................................................. 6

*U.S. v. Porcelli*, 865 F.2d 1352 (1988) .................................................................. 18

## Statutes

18 U.S.C. 3771 ...................................................................................................... 10

**MARCH 18, 2014**

A fraud has been committed on the United States Supreme Court and, now, this court (and the courts of New York). We reluctantly, but of necessity and for the record formally, accuse persons in the Office of the United States Attorney, Eastern District of New York together with others, most importantly Michael Beys, former EDNY AUSA and counsel for Felix Sater, of conspiring to falsify evidence and obstruct justice with the result of defiling the certiorari process of the United States Supreme Court and the appeals process in this court in an endeavor, and with the intent, to perpetuate an illegal system of concealing criminal cases and thereby defraud crime victims.

As part of this, Beys has committed an astonishing contempt in revealing the contents of the sealed SDNY RICO complaint underlying all this in a publicly filed state court complaint and then orchestrating a public relations mass emailing of hundreds of thousands of press releases describing his complaint and where to find it.

*****

It's been said, "The facts don't always speak for themselves, so when they do, get out of the way and let them." Hence this prologue, occasioned by the fact that 41 hours ago Beys, now also counsel for Sater co-felon Salvatore Lauria, publicly filed suit against appellant Oberlander's client Jody Kriss, accusing Mr. Kriss of conspiring with attorney Gerry Shargell to murder Sater and Lauria in furtherance of extortion.

In complaint 152324/2014 (NY Sup. Ct.), Beys charges (1) that Mr. Kriss gave "sealed" documents to Gerry Shargell – Gerald L. Shargell, Fordham law professor and criminal defense attorney now practicing at Winston Strawn – that revealed Sater and Lauria were cooperators; (2) that Mr. Shargell then passed them on to his Mafia clients,

including Daniel Persico, Colombo soldier and nephew of Carmine "the Snake" Persico; (3) that supposedly Persico learned for the first time from them that Lauria and Sater were "rats" who helped send him to prison in *U.S. v. Coppa et al.*; and (4) that as intended in mid-2012 Persico accosted Lauria in broad daylight before witnesses, beat him, accused Lauria of informing on him in *Coppa*, and told him to tell Sater that he (Persico) was going to have Sater killed too. (Before witnesses, yet – Right…Like mobsters routinely announce murder plans in public).[1]

**Misrepresentation of Judicial Records**

Supposedly Kriss did this to further an extortion plot to take $100,000,000 from law firms who would fear he would have their partners killed next. (The complaint doesn't say if Kriss planned to have Mr. Shargell arrange those hits, and it doesn't say what Shargell's cut was. But we digress.)

Inconveniently for Beys, not only is it a matter of public record (shown in public court files dating back to 2000) that (1) Persico (and anyone else who cared to know, as well as every *Coppa* defendant) learned of Sater and Lauria's cooperation 14 years ago, indeed was told of it by AUSA Corngold, and (2) their cooperation was made public on PACER) and in the National Archives 5 years ago; (3) Lauria himself revealed in his autobiography in 2003 that he had "given up" Persico to the FBI to cut a deal; (4) the official transcript of Lauria's February 5, 2004 sentencing corroborates the above, as it shows FBI Agent Taddeo, AUSA Corngold, and Lauria's counsel explaining to Judge Glasser that Persico, knowing of his cooperation, had already threatened Lauria.

---

[1] Beys doesn't put Shargell's and Persico's names into the complaint, but he's obviously going to try to prove it in state court, and obviously can't hide their names there.

**Willful and Contumacious Violation of Sealing Orders**

Inconveniently for this court, Beys's New York Supreme Court complaint quotes at length and otherwise describes the contents of the sealed SDNY RICO complaint(s) in *Kriss v. Bayrock*, 10-CV-3959, which, given Beys's prolific writings on the subject is no less than conclusive proof of willful and contumacious criminal contempt which the courts must now deal with.

*****

That said, pending imminent motion practice on the subject, we, reply to the government's opposition.

6

## SUMMARY

First, we argue that the "sealing" and "unsealing" that occurred below suffered from **structural error**, that there were constitutional deviations requiring reversal and remand (obviously as to the "unsealing" only).

Second, we argue that the "sealing" and "unsealing" suffered from **trial error**, error of less than constitutional dimension but still justifying reversal and remand, especially under the de novo standard applicable to the First Amendment issues present.

Third, we deal with a related issue, which is that the docket below remains intentionally incomplete, with the failure to docket documents that are not sealed; we consider them by definition "unlawfully sealed" or concealed, but there should be no need to go through a separate mandamus proceeding to remedy this.

Finally, we augment the argument for structural error by showing that ignoring such structural problems, let alone as happened here "**deliberately designing them in as a feature, not as a bug,**" inevitably leads, and did lead, to fraud and corruption.

And *in passim* we address the government's ad hominem comments about Mr. Oberlander, reminding the court that there are two appellants here and that in any event the issue is the right of public access, not Mr. Oberlander's access, and even a twice convicted felon like Sater has the same rights of access as everyone else.

# PART I
## STRUCTURAL ERROR

### The "Sealing"

*Substantive Structural Error*

The "sealing" was structurally defective because it failed to make individual, particularized findings of *adjudicative* facts justifying closure (harm, imminence, lack of less restrictive alternatives) and instead relied on *legislative* facts.

In the *Richmond* line of cases[2], the Supreme Court made clear that where a First Amendment right of access applies, no criminal proceeding may be closed without individual, docketed findings supporting closure made only upon public notice

In *Hartford Courant v. Pellegrino*, 380 F.3d 83 (2004), and *U.S. v. Alcantara*, 396 F.3d 189, 192 (2d Cir. 2005), this court held that dockets and sentencings are subject to First Amendment right of access.

Nonetheless, EDNY and SDNY prosecutors and courts continue to circumvent that precedent, finding encouragement in *U.S. v. Doe*, 63 F.3d 121 (2d Cir. 1995), where this court held that merely by uttering the shibboleths "organized crime" and "risk to cooperator," even entire criminal cases, even their very existence, may be concealed without particularized findings, everything filed "blanket" sealed, based only on the judge's "general" sense of risk – *i.e.*, based on legislative, not adjudicative, findings.

But Article III courts may only decide controversies, not policies, and are to do so based on the *facts* of each case, not on generalized gut impressions of risk, which generalizations and rule-making in respect of them are left to the legislature.

---

[2] *Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980).

By arguing that no court has ever criticized *Doe*, the government concedes what's going on, *viz.* an assembly line, the antithesis of individual determination, where no one speaks for the public – or the victims. The government tells the judge, "we have here a case that involves a cooperator…. It's an organized-crime case…. Cooperators have been threatened in the past…. Please seal it up." The defense attorney says (to his client), "this is great, no one will ever have to know that you just pled guilty to stealing $40 million. The government isn't even gonna require restitution, because in ten years, they'll be so embarrassed that they won't want to make it public. And not only that, you can lie, cheat, and steal some more, get professional licenses and hide your conviction, really anything, and if you're ever caught just say, 'the government made me do it I have a federal officer defense a/k/a I have a license to steal'." And the judge says, "close the doors to this courtroom," but doesn't bother *writing* and *docketing* an order capable of appellate review setting forth the grounds for closing the courtroom.

Once you go down that road, you issue blanket sealing orders and such are again, *per se*, structurally illegal for lack of particularization. **It is obvious that if you can't seal one document or hearing without particularization, you sure can't seal the whole case without them**.

*Procedural Structural Error*

Even if the Supreme Court were to confirm that it is lawful to "seal" based on "generalized" knowledge, the "sealing" here would still structurally fail, because there is no written order signed, or anything signed, or anything transcribed by a reporter, or the issuance of any order docketed, and as this court held in *Pellegrino*, without such there is no way to tell whether any "sealing" was lawful.

Unless, of course, this court would uphold as without error Judge Glasser's pronouncement from the bench that the fact that the whole case was "sealed" without any evidence of how that happened necessarily means, and can mean nothing else, than that he must have followed constitutional procedure. **That's not likely, as it would repudiate _Pellegrino_, and no mere panel can do that. This court is bound by precedent to disavow Judge Glasser's statement, to the extent it could be interpreted as not dictum but as a holding that, in sum, "the sealing that went on was legal simply because there's no proof that it was, so if there's evidence of the order and the findings supporting it we evaluate it, but if there's not we presume validity."**

We assert that is structural error, to uphold as _per se_ legal "sealing" that which took place without any record, as well as a guarantee of judicial tyranny.

## The "Unealing"

_Procedural Structural Error_

_First_, the "unsealing" procedure was structurally defective because appellants and the press were excluded from presenting evidence.

Remember this "unsealing" proceeding was brought by the petition of the public, press and lay. They were parties to it. The government is also a party, whether aligned or adverse, depending on its advocacy as to any one document. Then how can it happen in an adversarial proceeding **initiated** by private persons, _a fortiori_ asserting First Amendment rights, a plaintiff/petitioner is not allowed to put on a case? We aren't talking about excluding appellants from hearing the government's case; we will be

10

charitable and call that mere **trial** error. Wrongfully excluding a piece of evidence is trial error, but wrongfully excluding plaintiff from presenting *any* evidence is structural error.

*Second*, bad as that is, it's horrific when in the context of prior restraint. Assuming *arguendo* that the standards of First Amendment access are lower than the standards of First Amendment speech, there simply is no question that enjoining speech always requires full adversarial due process regardless whether the ultimate standard applied is strict scrutiny or intermediate or whatever. *Carroll v. Princess Anne*, 393 U.S. 175 (1968).

That's what happened here. On October 9, 2012, as the government and Judge Glasser admit, press and appellants were ejected from the courtroom, but before they left, as the transcript shows (it was denied us because part of it, but not this part, was in a closed courtroom, Mr. Oberlander objected, arguing on the record that since the "unsealing" of dozens of documents was to be adjudicated and he had helped write, with counsel, parts of at least half of them, that to keep them "sealed" would prevent him from disseminating, not the contents, but the contents as ascribed to such document; in other words, from describing as such the filings he or counsel had made, and that as the Supreme Court has held even protective orders in disclosure are governed by prior restraint intermediate scrutiny, *Seattle Times v. Rhinehart*, 467 U.S. 20 (1984), how can the adjudication of the "unsealing" of documents already known to, let alone authored by, a party be conducted by not allowing him to submit evidence?

We repeat that argument here, as we know of no precedent where a party can't admit evidence even as to other documents unknown to him; in fact quite the contrary, *e.g.* in *NSA Telecommunication Records Litigation*, 671 F.3d 881 (9th Cir. 2011), the fact that plaintiff was not permitted to see the government's evidence did not preclude plaintiff

from introducing his own. **If there is any case in the history of the United States where a plaintiff/petitioner has been prohibited from introducing any evidence, let alone where constitutional rights are at stake, we'd love to see it.**

Again, the issue is not whether the evidence that would have been presented would have been material or likely changed anything; that is discussed in the trial error section. Here we argue more directly that any proceeding where the judge precluded evidence from the plaintiff/petitioner is structurally – that is, *per se* – reversible error.

*Third*, "unsealing" was structurally unsound, as is this proceeding, as the government has had actual knowledge for ten years of the existence and easily found location of at least 15-20 federally protected crime victims of Sater yet intentionally – and inexplicably as they refuse to comment on it – the government and this court have refused to inform any of them, as required by 18 U.S.C. 3771, of this proceeding or the "unsealing" proceeding below. See *infra*.

## PART II
## TRIAL ERROR

**The "Sealing"**

By definition there can be no "mere" trial error argued as to the "sealing," as no one knows how it happened, only that it did. Presumably Judge Glasser ordered things placed in a vault; we merely don't have any knowledge of the order or its legality or even its legal efficacy and so cannot argue trial error, only structural error.

**The "Unsealing"**

*Procedural Trial Error*

As a precaution, should this court disagree that the failure to allow appellants to introduce evidence was structural error, then by definition the analysis must be whether it was trial error, which in turn depends on whether the evidence which would have been introduced would have been material. For reasons that will be obvious, we address this shortly in the section on fraud on the court.

*Substantive Trial Error*

The error asserted here is twofold, but intertwined.

First, we do not challenge the extent to which any "unsealing" decision may have been decided *vel non* based on a need to protect ongoing investigations. We have not the information. We have already objected to all such information having been kept from us, but nevertheless we can't object to what we do not know except to assert our right to have this court apply *de novo* review to the constitutional facts adjudicated.

Similarly, we do not challenge the same as to decisions *vel non* based on a need to protect the facts and circumstances of prior acts taken, of cooperation or anything else, again asking the court to apply its sound discretion in de novo review.

And, to the extent decisions *vel non* were based on the fact that certain documents were also subject to sealing orders issued by other courts, we do not challenge, so long as it is understood that at such times as those courts lift those orders we will safely deem all such continued "sealing" here to have been terminated.

That leaves the issue of decisions based on the need to protect Sater's safety, or his family, again so long as this court reviews the matters de novo, except with two exceptions:

*One*, if such decision is based on any part of the record we cannot see which in turn is, or is based on, the same *Doe* supposition, the same old "he's a cooperator so there must be risk" argument, we cite pure error as that is structural error, see supra, insofar as any such determination must be made by clear-and-convincing particularized findings of actual threat of, at least in First Amendment access matters, virtually certain and mortal danger.

*Two*, if such decision is in any way based on the statement in the secret order that there was a real threat against Sater, a/k/a the "Persico" threat – that is, if this court decides that were it not for that statement by Judge Glasser then one word on one page that he kept "sealed" would be necessarily "unsealed" – then we cite pure error insofar as we were precluded from introducing evidence, indeed threatened with sanctions for trying, to show that the threat is fabricated and was fabricated by Michael Beys in concert with Lauria, Sater, Persico himself, and persons in the OUSA, EDNY. See *infra*.

14

\*\*\*

Last, for this trial error section, that secret order itself has not one word in it that should be secret, and even if it did that could be redacted. Whether or not its statement as to the Persico threat is the product of fraud, it could have been redacted and is now rather a moot issue given that Beys has made the threat public, worldwide by blasting a press release around the world.

## PART III
## MISSING DOCKET ENTRY ERRORS

As the government concedes (as it must), the secret order contains a list of all documents "remaining" under "seal" and thus by definition all documents on the docket (that is to say, all documents filed in the case on that docket that thus should be shown on it) that are not on that "remaining under seal" list are not sealed, again are just (and inexplicably) hidden.

One of those is that certain letter of August 2012 in which Beys complains to Judge Cogan that Lerner and Oberlander tried to have Lauria and Kriss killed by passing secret documents to Shargell. That letter was filed on 98 CR 1101 in contempt proceedings and Judge Cogan subsequently ruled that notwithstanding he created a new docket for contempt proceedings that everything originally filed on 1101 would be subject to Judge Glasser's "unsealing" decisions, and as the government concurs that list on the secret March 15, 2013 order is determinative, that letter and other documents like it are not "sealed" any longer (if they ever were; Judge Cogan had ruled that they were or were not originally based on Judge Glasser's orders, not his), we must concur.

Therefore, they should be showing on the docket (in fact they should be showing even if they remained "sealed"), but they are not, and inexplicably so, and we ask a mandate issue for Judge Glasser to restore them to the docket.

This includes, for example, an order of Judge Glasser's of October 2012 in which he denied counsel's statement that he, Judge Glasser, and Kelly Moore of Morgan Lewis had spoken by phone on or about November 2, 2010 at which time Judge Glasser said that too many people had been given all the documents in question and he was going

to dissolve the restraints and rule for Mr. Oberlander on futility grounds. Judge Glasser denied having any evidence of such on that October 2012 order, which was public, and which we downloaded. But it was disappeared, oddly enough at the same time a document was unsealed from November 16, 2010 in which Kelly Moore refers to the same phone call. See Document 51 on 12-MC-150, under "seal" for no known reason but to avoid embarrassment.

What's a more interesting question is where are the complaint, the proffer, and the cooperation agreement? Why aren't they on the docket? Well the answer is of course that they were never filed in court, as the government concedes when it very clearly describes them as not having been sealed.

## PART IV
## THE INEVITABILITY OF FRAUD

At bottom, the issue presented on appeal is the systemic illegality of an entrenched, forty-year-old regime of secrecy, carried out by the government and district courts. Criminal cases are sealed for ostensibly valid reasons, but the sealing is not predicated upon constitutional standards. Sealing is predicated upon generalized standards, rather than *adjudicative* facts, in abrogation of the separation of powers.

Who speaks for the public and the victims, when they don't even know who the defendant is? The courts continue with the wholesale concealment of cases when there's a cooperator (as the government admits when it says that *U.S. v. Doe* has never been challenged), knowing full well that there's no one in that courtroom advocating for the victims or for the public. The word "victim" appears nowhere in the appellee brief, nor in any of the papers that were submitted by the government to the district court. They're too embarrassed to address the issue.

We make no apology for the tone of this brief; attorneys have the same right to criticize the judicial branch as they do to criticize the other two, bluntly and without fear of reprisal. We submit that concealment fraud through the unconstitutional "sealing" of cases is rampant. Indeed, we call this a picture of judicial fraud:

**United States District Court**

**Eastern District of New York**

**Judge GLASSER , I. LEO**

Friday, October 23, 2009

**Courtroom 8B S**

---

<u>10:00 AM</u>

<u>Criminal Cause for Sentencing</u>

**98cr01101**

*Deft.* - DOE JOHN

On Bond

\*

That was the public calendar posted prior to Felix Sater's sentencing on October 23, 2009.[3] Does that give notice to the public that "Felix Sater" was to be sentenced in public, as required by 18 USC §3553? That public calendar doesn't give notice of the public sentencing of "Felix Sater." No member of the public could have figured out Sater was to be sentenced that day, because the calendar said "John Doe." Does that satisfy *Alcantara*?

But if Felix Sater is the "John Doe" who was *publicly* sentenced in that courtroom, could *anyone* be enjoined from saying "Felix Sater" was sentenced in a *public* courtroom under the name "John Doe" and under index number "98-cr-1101"? Is the statutory

---

[3] It was available via Google until Oberlander told the district court it was public. It was then removed from on-line public access, along with over one hundred thousand public calendar entries in that database. Their removal from access immediately after we noted it to the district court is telling. We believe it was done because the court did not want us to be able to track down all of the "John Doe" sentencings in the Eastern District.

requirement, and Fed.R.Crim.Pr. requirement, and *Alcantara* requirement that defendants be sentenced in public served, or is it instead subverted, by allowing them to be sentenced under a pseudonym? No, a "Doe" sentencing in an allegedly public courtroom is no different than a sentencing in the robing room, which this court held to be unconstitutional in *Alcantara*.

Most troubling: Judge Glasser in that secret order said that "Felix Sater" was sentenced in open court, when he knew that it was calendared as the sentencing of "John Doe." The transcript of that sentencing, and the final judgment of conviction for Mr. Sater, dated October 23, 2009, were not docketed publicly until March 2013.

The public has a right to know the means by which prosecutors and the district courts circumvented the longstanding procedures that "must" be followed prior to closure: "[T]wo decades ago," this court stated in *Alcantara*, 396 F.3d at 192, "we established procedures for providing notice to the public that must be followed before closing a proceeding to which a First Amendment right of access attaches." *Alcantara* made clear that a sentencing may never be sealed; it must always be conducted in public. 8 U.S.C. §3553. The history of this case, and myriad other "Doe" cases in the Eastern and Southern Districts cannot be reconciled with *Alcantara*.

Now as to victims: We do not speak for them as we do not have *jus tertii* standing for them insofar as we (counsel and Mr. Oberlander) were not in privity with them during the proceedings below. Nevertheless we make legal argument even if we may not assert an injury and demand compensation: 18 U.S.C. §3771 requires victims be told of all open court proceedings and be told of and invited to participate in all sentencings, and requires the trial court ensure the government provides this right. So

how was Mr. Sater sentenced in open court but his victims not told, indeed not told of the entire case? Either it was open court or it was not.

Moreover, the failure to disclose (in the face of a duty to disclose) that the person to whom the duty is owed has a chose in action may constitute wire fraud, mail fraud, and be a RICO predicate. *U.S. v. Porcelli*, 865 F.2d 1352 (1988). We maintain that, since the government owed a duty to disclose to Sater's victims that they had a right to seek restitution, and sue to get it, and conspired with Sater to avoid restitution, there was a RICO conspiracy, and Judge Glasser presided over it all the way through years of attempts to prevent Oberlander from revealing governmental and judicial misconduct. Sater's counsel admitted so in an email dated May 18, 2011: (98-cr-1101 docket entry No. 123, at PDF page 25).

> [Y]our client [Mr. Oberlander] … has reached the end of his litigation rope. Even if Judge Glasser decides to hold a hearing or oral argument to determine whether to unseal specific docket entries of Doe's criminal proceeding, **he will do so without considering your arguments** or appeals. If you believe you are driving the unsealing issue, you are mistaken.

And the docket shows that what Sater's counsel predicted would happen did happen.

We do not know what is blacked out in the brief. But it appears (based upon the section heading "Danger to Sater and his Family") the government has ginned up a threat, to make the *ex post facto* reasoning for sealing look legit. We infer from the heading that arguments have been made that, as a result of news accounts or as a result of conspiracy with Gerald Shargell, Sater's co-conspirators learned that he, or that he

and Lauria, were cooperators, then made threats against him, ostensibly beating up Lauria to send a message to Sater.

Although the government, in its appellee brief, argues it has no reason to believe anyone outside of the co-conspirators' legal teams was given *Brady/Giglio/Jencks* materials about Sater back in 2000-2004, such arguments are disingenuous for two reasons:

First, who reading this wants to believe that criminal defense counsels do not discuss with their clients who the government witnesses against them will be? Not we.

But second, **the reason there is no evidence that the co-defendants knew, no evidence that counsels told anyone, no evidence of anything that would repudiate the government's position is that there was no one in the courtroom with inclination to present it**. As a matter of structural error when you only hear evidence from the government and from the criminal defendant in favor of concealment, who is left to present evidence to the contrary? So it doesn't matter that the government is confessing fraud by reckless indifference in that it failed to investigate whether Persico really knew. This is what the system is designed to produce: one-sided evidence:

We could go on as to the government's fraud and bad faith noting that Lawrence Ray was *pro se* when he received such materials. (JA-176) and that Daniel Lev pled guilty (long before Oberlander ever heard of Sater) to threatening Sater due to his cooperation (rather a neat trick if no one knew who the cooperator was). We could refer the court to the website maintained by Lev's attorney which has maintained a description of his

22

representation, noting how he got Lev off so easily by showing that the government's main cooperating witness was a fraud: think he knew who it was?

We could go back to co-conspirator Lauria and his book *The Scorpion and the Frog*, published in 2003, a tell-all account of the Sater pump-and-dump conspiracy, in which he disclosed, *e.g.*, that co-conspirator Persico knew that Lauria and Sater[4] were cooperators. And we have a letter in which the government, as a non-party, advises that Sater and Lauria declined protection when it was alleged by Beys that there had been a threat against him in the summer of 2012.

And the joint appendix page JA-274 is the government's docketed witness list in the matter of *U.S. v. Persico*. Obviously, Persico was made aware that Sater was a cooperating witness, since the government disclosed him as a cooperating witness.

And Lauria's sentencing transcript, confirming the account in *The Scorpion and the Frog*, shows that Persico was well aware who was cooperating against him.[5]

| | |
|---|---|
| The Court: | Mr. Stahl made reference to threats, which I see no reference to in your letter. |
| | What do you know about that? |
| Mr. Corngold: | The threats, your Honor, Mr. Lauria reported them.  They are described in Mr. Stahl's letter. … [W]e were never able to identify who made the threats…. |
| Mr. Stahl: | Your Honor, first we know in particular there was the initial approach by a private investigator hired by Mr. Persico, and that was someone that Mr. Lauria had grown up in the neighborhood with. So that's one |

---

[4] Sater is called "Lex *Tersa*," an anagram. None of the co-conspirators would have had difficulty figuring out "Tersa" was "Sater," as the government's March 2, 2000 press release that identifies all of the 19 co-conspirators who were charged is reproduced, changes only one thing: "Sater" to "Tersa."

[5] The February 5, 2004 sentencing transcript of co-conspirator Salvatore Lauria is not docketed (see 98-cr-1102). It will be provided to the court upon request.

23

of the individuals that he was very concerned about, because Mr. Persico viewed as the ultimate act of betrayal. [sic]

Second, Mr. Lauria, the telephone call … was traced to a phone booth a mile and a half away, and was reported to the local police, and of course was reported to [FBI] Agent Taddeo….[6]

In the face of such evidence, the government again presents willful ignorance, arguing that it has no reason to know that the co-conspirators' *counsel* told them that Sater would be a witness against them. Again: How stupid does the government think anyone is, to believe defense counsel do not discuss government witnesses with their clients. And did the government bother to ask Persico's and Lev's counsel before making such an argument whether they were aware that Sater was a cooperator? Or send the FBI to ask the defendants if they knew or had been told?

Did the government call Persico or his investigator to ask if they'd read Lauria's 2003 book,? And explain that Persico signed in and was there with counsel in 2000 in a severance hearing where Sater's cooperation was mentioned? All of the above was present in the pubic court files of *Coppa* for years, even the day filed, and since when can secrecy be maintained as to documents already in the public domain, on some argument that, "Well, there's no evidence anybody ever looked at them?"

---

[6] Lauria sentencing transcript, pp. 9-10. Notably, AUSA Corngold said that Lauria was at the top of the pyramid with "Sater" and "Klotsman." (p.8). Also Lauria's attorney stated at sentencing that he had settled with 15-20 of his victims who had brought suit against him. (p.7). **Obviously, those victims were easily identifiable. So when Sater came up for sentencing five years later, why didn't the government tell them of their CVRA rights to be heard at sentencing and to claim restitution (if not made whole by Lauria) from the other guy at the top of the pyramid, Sater?**

The government disingenuously argues that "[f]rom the case's inception in 1998 through August 2012, the docket sheet, along with all of the documents filed therein, was sealed." (Appellee brief, p. 5). Yet docket entry number 1 in 98-cr-1101, which is the government's Rule 7(b) notice of intent to move for leave to file a criminal information upon defendant Sater's waiver of indictment, at page 2 (the Criminal Case Information Sheet), there is this question and answer: "8. Has this indictment/information been ordered sealed?" **The government checked the box indicating "No." At the inception, this was not a "sealed" case**. There isn't even anything on the electronic legend of the document to indicate that it was sealed.

This case was not "sealed" from inception. Rather, it was "hidden" from the day Sater pled guilty, until it was "accidentally" made public fourteen years later. Though Judge Glasser may have told the courtroom deputy in 1998 "transcript sealed" and "all documents sealed," those are past-tense statements, not prospective orders that henceforth all documents and proceedings shall be sealed. And orders are not orders until signed and docketed in any event. It could not be (constitutionally) possible to issue a ruling in 1998 that contained the requisite findings supportive of sealing and closure, and capable of appellate review, as to documents filed and proceedings held, for example, in 2009.

But if appellants are wrong, and those 1998 oral directives were *real* orders with prospective effect: Was Sater's October 23, 2009 sentencing sealed? If so, how to

explain the court's statement in its order of March 15, 2013 that Sater was sentenced in open court, an order that went to the United States Supreme Court.

No, wait…. If the sentencing and the transcript were public, that must mean that the 1998 oral sealing "order" wasn't prospective, only past tense.

And if only past tense, then why is anything issued after the date of the plea (when the deputy made the notations) still hidden?

The docket of 98-cr-1101 reveals the public was never given advance notice, and an opportunity to object, that the court might seal any aspect of the proceedings. As there was no formal motion to seal, with advance notice to the public, and there was no written order containing findings supportive of sealing capable of appellate review *prior* to "sealing" anything, by what authority was a single item on that docket "sealed" from 1998 through 2013 or at best 2005 through 2012? The answer: None.

Also inconsistent with justice, the docket of 98-cr-1101 reveals that the district court engaged in *ex parte* conferences with Felix Sater's counsel and the government to address the First Amendment issues raised by Oberlander and Lerner.[7]

---

[7] For example, the docket entry of the secret *ex parte* conference conducted on January 10, 2012 states: "A Status Conference as to Felix Sater was held 1/10/12 before Senior Judge I. Leo Glasser: AUSA Todd Kaminsky and Evan Norris appeared on behalf of the Government. Michael Beys and Jason Berland appeared on behalf of John Doe. The Court directed the government and John Doe to provide a detailed chronological account with transcripts, *of what the core issues involving this case [are] and how it evolved into a First Amendment issue. The Court will issue an Order on Notice to Lerner directing the parties to brief the issues before the Court.*

Again, the district court has acknowledged in a *secret* order that Felix Sater was sentenced in "public" on October 23, 2009, yet the order so stating remains under seal. The government says nothing about this in its appellee brief, conceding *sub silentio* there is no basis for maintaining under seal an order that says Sater was sentenced in public. There was a basis for hiding it, to continue the cover-up, just not a lawful one.

The government insinuates this appeal raises the same issues as the 10-2905 appeal. However, the prior appeal did not involve a motion to unseal; Mr. Oberlander already possessed the PSR (the only document as to which this court previously exercised appellate jurisdiction[8]), and the issue on appeal was his right to use *that* document and the information therein, in furtherance of his (and his client's) First Amendment rights to petition for redress of grievances and to speak freely regarding matters of public concern contained therein. The prior appeal did not involve an effort by Oberlander to *access* the PSR (just as the *Pentagon Papers* case did not concern efforts to get *access* to documents stored in file cabinets in the Pentagon). The issue was his right to use it to show that Sater was furthering his racketeering by lying to his probation officer, and to show Congress how mandatory sentencing law is circumvented in this circuit. Though this court upheld the injunction as to the PSR, the court said Judge Glasser should take up the government's motion to unseal, and noted its prior order of April 19, 2011, wherein this court confirmed Judge Glasser's jurisdiction to take up the government's or anyone else's motions to unseal. Obviously, such "future" motions

---

[8] This court held that the other documents – viz. the criminal complaint, the information, the cooperation agreement, and the proffers – were not properly the subject of the prior appeal.

27

were contemplated by this court, and yet the government maligns the appellants for having moved to unseal, instead of owning up to the fact that it publicly filed a motion to unseal and then secretly moved ex parte for leave to withdraw its motion.

The government argues on page 12 of its brief that Judge Glasser found that appellant Oberlander "knew" that the 98-cr-11010 case had been sealed from its inception. The government so argues, even though there is no sealing order, and even though (as Judge Glasser himself acknowledged, sealing orders do not bind non-parties, but are only directed to court personnel[9]), and even though the government did not even request that the case be sealed "at its inception." And the government wishes away the fact that this appeal is brought in behalf of two separate individuals – Mr. Palmer (a stranger to the earlier proceedings) and Mr. Oberlander (a stranger to the criminal case against Sater, but a non-party respondent as to the earlier prior restraint proceedings.) The government does not bother discussing appellant Palmer's independent right, as a member of the public, to have the entire 98-cr-1101 case made public.

The government also points out that the U.S. Supreme Court declined to grant certiorari. But fails to mention that appellant Oberlander moved for and was granted leave by the U.S. Supreme Court to publicly state in his petition the information from Sater's PSR that was demonstrative of governmental and judicial misconduct. Such information is now public, and such misconduct widely reported after the Supreme

---

[9] See Joint Appendix p.234 in prior 10-2905 appeal (Glasser, J.: "[Mr. Oberlander,] your understanding is correct, that when a case is declared to be a case filed under seal it directs court personnel that this case is not to be made available to anybody except under court order….") That is, Judge Glasser acknowledged that Mr. Oberlander was correct, that if there were a sealing order it could not have bound him, a non-party to the case. As for the PSR, Judge Glasser conceded it was not subject to any sealing order, but was enjoining its dissemination pursuant to *Charmer*. (See JA-265 in 10-2905 appeal).

Court made the petition for public. So, as to information that the U.S. Supreme Court allowed to be made public, there is no basis for continued full "sealing" of the PSR.

The district court excluded the appellants from the courtroom when it conducted its review of the documents. Had we been present, the district court would have seen the folly of sealing information that the U.S. Supreme Court deemed to be fair game. As this court has held that its duty is to review sealing orders *de novo*, and conduct its own independent review, we submit that this court should now do what it says it is required to do, and unseal all information obtained by Oberlander outside of court process, particularly information indicative of judicial and prosecutorial misconduct, which information the U.S. Supreme Court allowed to be made public when it published the redacted petition for certiorari.

## FINAL THOUGHTS

In this court's June 29, 2011 decision in *Roe v. USA*, the court stated: "The remainder of this cause is remanded… (i) to rule upon the government's unsealing motion of March 17, 2011 …." Given this court's holding in *Lugosch v. Pyramid Co. of Onondaga Co.*, 435 F.3d 110 (2d Cir. 2006), that such motions are to be taken up expeditiously, how does court feel that after this court issued its instructions to Judge Glasser to take up the March 17 motion to unseal, the government made a secret *ex parte* application to withdraw that motion? (See 98-cr-1101 Doc. No. 120). Judge Glasser's secret order of August 24, 2011 states:

> FILED UNDER SEAL
>
> ORDER
>
> A letter motion, dated August 24, 2011, has been made by the government seeking an Order that would permit it to withdraw an unsealing motion made on March 17, 2011, without prejudice and with leave to re-file that motion at a later, unspecified date.
>
> The motion is hereby granted.
>
> SO ORDERED.
>
> /s/     I. Leo Glasser

What compelling interest was served by keeping secret that the government was withdrawing its motion to unseal the 98-cr-1101 case? And how could the district court have believed it proper to have kept from the appellants that that March 17, 2011 motion had been withdrawn, a motion that the government had advised this court and the district court it was ethically bound to make?

Why does the government argue that when Oberlander sought a temporary seal of the SDNY RICO complaint, Oberlander failed to inform the district court that Sater was a cooperator? Oberlander testified otherwise at the prior proceeding (see joint appendix of 10-2905 matter, at pp. 270-271). No one contradicted him. Why does this matter, given that information concerning cooperation (unlike, e.g., social security numbers) is not required by court rules to be redacted or otherwise placed under seal?

Why does the government say Judge Glasser found Bernstein wrongfully obtained the Sater documents, when he stated that there was no information one way or the other, and said only he "may" have stolen them.

The government admits the April 2, 2002 letter on the *Lauria* docket in which Sater and Lauria were identified as cooperators was made public in 2009 and re-sealed upon request of the government. In light of *Gambale v. Deutsche Bank*, 377 F.3d 133 (2d Cir. 2002), how could the government have requested the re-sealing, and how could the court have so-ordered the request over objection.

In short, and in summation, where there is government secrecy it is inevitable that government immunity will soon become government impunity.

*****

31

Undersigned certifies that this document has 6,983 words from the end of the Table of Authorities to the beginning of this sentence and according to MS-Word 2013, with which it was prepared, is entirely in 14-point proportional Garamond typeface, double spaced by specification of exactly 28-pt line spacing (or, where single spaced, by specification of exactly 14-pt line spacing) and is compliant with all other format rules.

Dated:      New York, New York
            March 18, 2014
            March 24, 2014 (as repaginated)

                        Law Office of Richard E. Lerner, PC
                        By:_____/s/_____
                              Richard E. Lerner, Esq.

                        501 Fifth Avenue, Suite 300
                        New York, New York 10017
                        richardlerner@msn.com
                        (917) 584-4864
                        Attorney for Appellants